**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

THE INDEPENDENT PARTY OF
FLORIDA and THE PARTY FOR
SOCIALISM AND LIBERATION,
    *Plaintiffs*,                                CASE NO: 4:20-cv-00110-MW-CAS

v.

LAUREL M. LEE, Florida
Secretary of State, in her official capacity,
    *Defendant*.
_____/

## SECRETARY'S MOTION TO DISMISS

Defendant, Florida Secretary of State Laurel M. Lee, pursuant to Rule 12(b), Federal Rules of Civil Procedure, moves to dismiss the Complaint (DE 1) with prejudice because it fails to state a claim and will nevertheless fail as a matter of law.  Minor political parties can access Florida's General Election Ballot and have their presidential candidate's names printed thereon by *either*: 1) affiliation with a national party; or, 2) by petitions signed by one percent (1%) of the state's electors (132,781).  *See* Fla. Stat. § 103.021(4)(a) (affiliation) and (b) (petition).  Plaintiffs challenge each alternative method under the First and Fourteenth Amendments and the Equal Protection Clause.  (DE 1, ¶¶ 28-31 (Count I) and ¶¶ 32-35 (Count II)).  The Eleventh Circuit has affirmed this Court's holding that Florida's latter method is constitutional under the same attack.  *U.S. Taxpayers Party of Florida v. Smith*,

871 F. Supp. 426 (N.D. Fla. 1993), *aff'd* 51 F.3d 241 (11th Cir. 1995).  Florida's previous and *higher* three percent (3%) petition threshold for minor party statewide candidates has even been upheld and affirmed by the Supreme Court.  *Beller v. Kirk*, 328 F. Supp. 485 (S.D. Fla. 1970), *aff'd mem.*, 403 U.S. 925 (1971).  When that same, previous three percent (3%) threshold was reviewed *again*, this time by the Eleventh Circuit in *Libertarian Party of Florida v. State of Fla.*, 710 F.2d 790 (11th Cir. 1983), the Court affirmed its constitutionality "[a]pplying what appears to be rather settled law." *Id.* at 792.  Indeed, the Court found that [i]f that [previous] case," referring to *Beller*, "does not control the outcome of this case, analysis of the other Supreme Court ballot access cases does." *Id.* at 793.  The same can be said of this case and the Eleventh Circuit's affirmance of the current, one percent (1%) threshold for minor party presidential candidates in *U.S. Taxpayers of Florida*.  Florida's alternative affiliation requirement for minor party access also survives scrutiny, albeit without the benefit of "rather settled law."  *Libertarian Party of Florida*, 710 F.2d at 792.  Regardless, neither method of ballot access is exclusive.  Each is an alternative to the other and Plaintiffs' candidates may additionally access the ballot on their own, by the petition method, § 103.021(3), or as a write-in candidate, § 103.022, in the event the party itself fails to show the "significant modicum of support" Florida is permitted to require.

*Cartwright v. Barnes*, 304 F. 3d 1138, 1140 (11th Cir. 2002), *quoting Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

## I.   STANDARD

The standard for evaluating ballot access restrictions is a "flexible standard." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983). The Court must engage in a three step process. *Anderson*, 460 U.S. at 789. First, the Court must "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Id.* Second, "[i]t then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* Third, "[i]n passing judgement," the Court "must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* "Only after weighing all these factors is the Court in a position to decide whether the challenged provision is unconstitutional." *Id.*

Ultimately, however, the "rigorousness" of the inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 435 *quoting Anderson*, 460 U.S. 780. When "only 'reasonable, nondiscriminatory restrictions' [are imposed] upon the … rights of voters, 'the State's important regulatory interests are generally sufficient to justify'

the restrictions." *Id.* quoting *Anderson*, 460 U.S. 780. Indeed, "lesser burdens…trigger less exacting review." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Resolution at the motion to dismiss stage can therefore be proper. *E.g. Beller v. Kirk*, 328 F. Supp. 485; *Cartwright v. Barnes*, 304 F. 3d 1138 (11th Cir. 2002); *Lawrence v. Blackwell*, 430 F. 3d 368 (6th Cir. 2005); *Stone v. Board of Election Comm'rs for the City of Chicago*, 750 F. 3d 678 (7th Cir. 2014); *Acevedo v. Cook Cnty. Officers Electoral Board*, 925 F. 3d 944 (7th Cir. 2019); *Faas v. Cascos*, 225 F. Supp. 3d 604 (S.D. Tex. 2016) (dismissing with prejudice).

## II.   ARGUMENT

"There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1970); *Storer v. Brown*, 415 U.S. 724, 745 (1974). Florida has chosen two alternative means to do so for minor political parties seeking to have their presidential candidates placed on the ballot.

While the *Anderson-Burdick* balancing test is by no means a "litmus-paper" test, "there is nothing remarkable about granting a motion to dismiss in an election-law case if careful consideration of the complaint shows that the plaintiff has not

stated a claim." *Stone v. Bd. of Election Comm's for City of Chicago*, 750 F. 3d 678, 686 (7th Cir. 2014) (rejecting argument that "judgments about what might or might not be burdensome are premature"); *see also Cartwright v. Barnes*, 304 F. 3d 1138 (11th Cir. 2002) (affirming dismissal for failure to state a claim in challenge to Georgia's 5% signature threshold for congressional candidates); *Beller v. Kirk*, 328 F. Supp. 485 (S.D. Fla. 1970), *aff'd mem.*, 403 U.S. 925 (1971) (same as to Florida's previous 3% signature threshold for minor parties' state and local candidates). Plaintiffs' Complaint fails to state a claim that would survive the balancing test and it should therefore be dismissed. Plaintiffs' claims nevertheless fail as a matter of law based upon prior precedent.

A. <u>One Percent Threshold Survives Scrutiny</u>

Plaintiffs allege that the one percent (1%) threshold unconstitutionally burdens their First and Fourteenth Amendment rights because it would "cost over $100,000" to gather sufficient petitions. DE 1 ¶¶ 28-31, ¶ 26. "Practically speaking, much of the action takes place at the first stage of *Anderson's* balancing inquiry." *Stone v. Bd. of Election Comm'rs for City of Chicago*, 750 F. 3d 678, 681 (7th Cir. 2014). Because, if the burden is only "reasonable [and] nondiscriminatory," a state's "important regulatory interests are generally sufficient." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). "The question of a burden's severity," has been recognized in other Circuits as "principally one of

law, which may be resolved by reference to case law assessing similar challenges." *Johnston v. Lamone*, 2020 WL 1027805, ---Fed. Appx.--- (4th Cir. 2020) (internal quotations omitted). While not expressly stated, our Circuit has acted accordingly. *See Cartwright v. Barnes*, 304 F. 3d 1138, 1140-41 (11th Cir. 2002) (affirming dismissal with prejudice based on *Jenness*'s conclusion that a 5% signature requirement "impose[d] no suffocating restrictions whatever"); *Swanson v. Worley*, 490 F. 3d 894, 903 (11th Cir. 2007) ("Based on our precedent, we conclude that Alabama's signature requirement by itself … is a reasonable, nondiscriminatory restriction"); *Stein v. Ala. Sec'y of State*, 774 F. 3d 689, 694-95 (11th Cir. 2014) (finding "*Timmons* settles that the burden they [minor parties] shouldered was not severe").

Courts have found much more burdensome thresholds than Florida's one percent (1%) to be reasonable and nondiscriminatory and upheld them against First Amendment and Equal Protection clause challenges. Indeed, the Eleventh Circuit reviewed those cases in *Libertarian Party of Florida* when it found Florida's previous three percent (3%) threshold for minor party statewide and local candidates to be a minimal burden and concluded it was constitutional. *Id.* at 793-95. This Court did the same a decade later in *U.S. Taxpayers Party of Florida*, when it found our current one percent (1%) threshold and July 15 deadline for minor party presidential candidates "does not place a significant state-imposed

restriction on a nationwide electoral process" and are justified by Florida's interests. *Id.* at 432-47. The Eleventh later affirmed. *Id.*, *aff'd* 51 F.3d 241 (11th Cir. 1995).

Nothing has changed, at least not for the worse. Nor do Plaintiffs allege as much. Florida still has the same alleviating factors on a minor party's ability to gather signatures that were recognized in both cases. Registered voters can sign petitions for any or *all* candidates vying for their attention, regardless of party affiliation or participation in another party's primary. *See* Fla. Stat. § 103.021(4)(b). Signatures can be collected from anywhere in the state, including from only one or a few heavily populated areas. *Id.* There is no limit on the number of signatures that can be submitted, allowing minor parties to ensure a sufficient valid number by the deadline. *See* Fla. Stat. § 99.097. Minor parties may also waive the verification fee, unlike at the time of *Libertarian Party of Florida*. Fla. Stat. § 99.097(4); Laws of Fla. Ch. 99-318, s. 7 (removing minor parties from exception to fee waiver). Also, signatures for minor parties do not really expire; they are good for the July 15 deadline that next occurs. *See* Rule 1S-2.045(6)(a) (incorporating Supervisor's Handbook on Candidate Petitions at 5-6)[1].

---

[1] The Supervisor's Handbook is available at: https://soe.dos.state.fl.us/pdf/2020%20SOE%20Handbook%20on%20Candidate%20Petitions.pdf. The same information is contained in the Candidate's Petition Handbook at 4-5, available at: https://dos.myflorida.com/media/702479/2020-candidate-petition-handbook.pdf.

In other words, minor parties could begin collecting signatures for the 2020 General Election Ballot beginning on July 16, 2016 – which was almost four years ago.

Plaintiffs do not allege that they have made *any* effort to collect signatures. *See* DE 1. They do not allege any burden caused by the July 15 deadline; only of the "cost [of] over $100,000 to hire and train sufficient laborers" to meet the one percent (1%) threshold. DE 1 ¶ 26. These allegations are insufficient to state a claim. The one percent (1%) threshold for minor parties not affiliated with a national party (or otherwise evidencing national support) has been in existence since 1970. Laws of Fla. Ch. 70-269, s. 8 (changing from "seventy-five hundredths percent" from at least 34 counties to one percent from anywhere, among other changes).

In *Stein v. Ala. Sec'y of State*, the Eleventh Circuit evaluated a minor party's claim that it would cost between $100,000 to $200,000 to pay signature gatherers to meet Alabama's petition threshold for its presidential candidates. 774 F. 3d 689, 697 (11th Cir. 2014).[2] The minor party argued that the cost, among other reasons, made collection efforts futile and the burden severe. *Id.* at 697-99. The Eleventh Circuit rejected the argument. "If the Party Plaintiffs had started gathering

---

[2] The candidate in *Stein* was on Florida's General Election Ballot in the relevant year. *See* Candidate Listing for 2012 available at: https://dos.elections.myflorida.com/candidates/CanList.asp. This is a

signatures on September 1, they could have met the signature deadline with twenty volunteers gathering an average of twelve signatures a day." *Id.* at 698. Plaintiffs here have had since July 16, 2016 (1,460 days) to collect the required 132,781 signatures. There is no requirement that they use paid signature gatherers. Indeed, they can use their own members, or other volunteers, to gather signatures. As of book closing for the March 17, 2020 Presidential Preference Primary, there were 106,580 members of Plaintiff Independent Party of Florida.[3] The Independent Party of Florida would therefore only need an extra 26,201 signatures, which would require less than one-quarter of the party's members to collect just one signature from a non-member. Of course, with just about 90 volunteers, it would only take 1 signature a day.

But even those minor parties seeking access in other cases at least *tried* to collect signatures. In *U.S. Taxpayers of Florida*, the minor parties seeking access for their presidential candidates "had collected nearly two-thirds of the required signatures" in just the "approximately two months" they had been soliciting. *Id.* at 433. This Court therefore found that "a reasonably diligent minor party – even one who waited until March in an election year to form a political party – could have

---

[3] Book closing statistics are available at: https://dos.myflorida.com/media/702728/1-by-party-by-county.pdf. They may be judicially noticed at any stage of the proceeding, including at the motion to dismiss stage. *See* Rule 201, Fed. R. Evid.

gathered the required number of signatures by July 15." *Id.* at 433. And that was for a political party just *formed* in March of the presidential year. *Id.* Here, Plaintiffs have existed much longer.[4]

Any burden on Plaintiffs is minimal and not at all alleged to be discriminatory.[5] Therefore, less rigorous scrutiny is applied and Florida's recognized interests, will generally carry the day. *E.g.*, *Burdick*, 504 U.S. at 435. Florida's many interests in requiring "some preliminary showing of a significant modicum of support" before printing Plaintiffs' party names and their respective candidates on the General Election Ballot is "well established under decided cases." *E.g. Libertarian Party of Florida v. State of Fla.*, 710 F. 2d 790, 793 (11th Cir. 1983) (citing some of the case law). Florida does not need to make any particularized showing in support of these interests. *Swanson v. Worley*, 490 F. 3d 894, 912 (11th Cir. 2007), *citing Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986); *Stein v. Ala. Sec'y of State*, 774 F. 3d 689, n.17 (11th Cir. 2014).

---

[4] Filings of the Plaintiffs may be judicially noticed at this stage. *See* Rule 201, Fed. R. Evid. The Party for Socialism and Liberation of Florida was registered in 2008. Campaign Document Search available at: https://dos.elections.myflorida.com/campaign-docs/?account=46324. The Independent Party of Florida was registered in 1993. Campaign Document Search available at: https://dos.elections.myflorida.com/campaign-docs/?account=46324. That Party's registration was revoked in 2016 for failure to submit a public audit of its finances, but was re-registered in 2018. *Id.*; *id.* at: https://dos.elections.myflorida.com/campaign-docs/?account=69767.

[5] Plaintiffs only allege the alternative affiliation method violates the equal protection clause. DE 1 ¶¶ 32-35.

Plaintiffs have not even alleged Florida lacks these recognized interests, or provided a reason they would not apply or provide insufficient weight here.

Nevertheless, the "test is not whether the regulations are necessary," or "narrowly tailored," "but whether they rationally serve important state interests." *See e.g. Swanson*, 490 F. 3d at 912. Florida's one percent (1%) threshold does so. The threshold "rationally serve[s]," and even furthers in a way at least commensurate to the burden imposed upon Plaintiffs' rights, Florida's interests in preventing: voter confusion or deception; frivolous candidacies; clogging of the ballot; and, frustration of the democratic process. *See e.g. Swanson*, 490 F. 3d at 910-12 (upholding Alabama's threshold for statewide candidates of three percent (3%) of the voters in last gubernatorial election); *Nader v. Cronin*, 620 F. 3d 1214 1218 (9th Cir. 2010) (upholding Hawaii's threshold for independent presidential candidates of one percent (1%) of voters in the previous presidential election). Plaintiffs do not allege otherwise. Rather, they allege "less burdensome alternatives exist;" specifically, the affiliation method. DE 1 ¶¶ 26-27. Not only do Plaintiffs implicate the wrong level of scrutiny, they point to the *alternative* method of ballot access that is also available to them and, apparently, is admittedly "relatively easy." DE 1 ¶ 33.

Plaintiffs therefore fail to state a claim and their action should be dismissed. Nevertheless, any well-stated claim that could be made would fail as a matter of

law under *U.S. Taxpayers of Florida* or other precedent. This claim should therefore be dismissed with prejudice.

    B. <u>Affiliation with National Party Survives Scrutiny</u>

In this circuit, constitutional challenges to state ballot access laws – whether based on the equal protection clause or the First Amendment – are to be considered under a less rigorous application of the *Anderson* test. *U.S. Taxpayers of Florida*, 871 F. Supp. at 430-31; *see also accord e.g. Barr v. Gavin*, 626 F. 3d 99, 108-11 (1st Cir. 2010) (evaluating and rejecting claim of arbitrary discrimination between recognized parties and non-parties for ballot access under the *Anderson-Burdick* balancing test). Much of the same analysis therefore applies to Plaintiffs' equal protection challenge to their alternative method of ballot access – affiliation with a national party. DE 1 ¶¶ 32-35; Fla. Stat. § 103.021(4)(a). Plaintiffs allege that permitting those minor parties affiliated with a national party to simply certify their presidential candidates for placement on the ballot, instead of gathering petitions, violates equal protection. Specifically, Plaintiffs allege that national party affiliation is "not rationally related to the level of support that a party has in Florida" or "any interest in regulating access to the Presidential ballot." DE 1 ¶¶ 34-35. Plaintiffs fail to state a claim either as alleged or as a matter of law.

Plaintiffs fail to allege they cannot affiliate with any one of the national parties. Nor do they allege they have tried, or that the national parties do not

sufficiently advance their respective party platforms. Plaintiffs do not allege that they themselves have taken the steps to become national parties in their own right. They allege no burden at all. Rather, Plaintiffs confuse the history of minor party presidential access and then conclude the requirement is irrational. DE 1 ¶¶ 9-16, 22-24.

Affiliation with a national party has been a ballot access alternative for minor party presidential candidates since 1999. Laws of Fla. Ch. 99-318, s. 5. Prior to that however, national party affiliation was still a requirement for ballot access in some way, for quite some time. *See* Laws of Fla. Ch. 70-269, s. 7. The 2011 amendment Plaintiffs refer to restricted minor party status by requiring the organization have a specific structure and members to be a "minor political party" in the first place. DE 1 ¶¶ 8-9; Laws of Fla. Ch. 2011-40, s. 2, 46. Prior to the amendment, at least one individual had formed multiple minor political parties. The amendment also cured the vagueness concerns referred to by Plaintiffs, by better defining what "national party" means. DE 1 ¶ 13; Laws of Fla. Ch. 2011-40, s. 45. National party affiliation as part of ballot access existed long before these changes.

As Plaintiffs concede, the affiliation method for ballot access is "relatively easy." DE 1 ¶ 33. Indeed, access by affiliation with a national party has not been historically difficult. Plaintiffs' allegations alone concede that as few as six and as

many as eleven minor parties attained ballot placement using this method in 2000, 2004, and 2008. DE 1 ¶¶ 10-12. Even one of the Plaintiffs has attained ballot placement this way. In 2012, Plaintiff the Party for Socialism and Liberation's presidential and vice-presidential candidates were on the ballot because they certified affiliation with a national party.[6] Currently, there are seven (7) minor parties in Florida. DE 1 ¶ 21.[7] Five (5) of them, are affiliated with national parties. *See* DE 1 ¶¶ 22-23. The burden to affiliate with a national party to access the ballot is therefore "reasonable" and Plaintiffs have not even alleged otherwise.

The affiliation method is also nondiscriminatory, despite Plaintiff's contrary conclusion. DE 1 ¶¶ 34-35. Plaintiffs do not allege that minor parties are treated poorly compared to major parties. Plaintiffs instead allege the discrimination occurs within minor party status itself –based on a minor party's national party affiliation. But, *all* minor parties must show a "significant modicum of support" before Florida must place them on its ballot. *Cartwright v. Barnes*, 304 F. 3d 1138, 1140 (11th Cir. 2002), *quoting Jenness v. Fortson*, 403 U.S. 431, 442 (1971); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political

---

[6] The names of candidates listed on any ballot may be judicially noticed at this stage. *See* Rule 201, Fed. R. Evid. Candidate Listing for 2012 available at: https://dos.elections.myflorida.com/candidates/CanList.asp.
[7] Political parties in Florida may be judicially noticed and can be found at: https://dos.myflorida.com/elections/candidates-committees/political-parties/.

expression" and therefore party is not entitled to have its name printed with its candidate, who was on the ballot). Minor parties have two methods of doing so in order to access Florida's ballot. They may show support within the state by gathering petitions, or they may show support nationally, acknowledging that presidential elections are decided by all states, and not just Florida. These alternatives rationally relate to, and balance, both Florida's interests in all elections (explained above) and the national interest in presidential elections. *See Anderson v. Celebrezze*, 460 U.S. 780, 794-95 (1983) (recognizing an additional, national interest in presidential elections).

Minor party access to the presidential ballot under the affiliation method is rationally related to the same compelling state interests Florida has for the alternative petition method. Plaintiffs allegations again fail to state a claim and otherwise fail as a matter of law.

### III.   CONCLUSION

Minor party access to the presidential ballot – under either alternative – is rationally related to and properly balanced with the same compelling state interests that have been "well-established" and Plaintiffs have not, and cannot, allege otherwise. Plaintiffs' Complaint should therefore be dismissed with prejudice.

WHEREFORE, the Secretary respectfully requests that the Court grant this motion and dismiss the Complaint (DE 1) with prejudice.

Respectfully submitted,

*/s/ Ashley E. Davis*
BRADLEY R. MCVAY (FBN 79034)
*General Counsel*
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
*Deputy General Counsel*
ashley.davis@dos.myflorida.com
candice.edwards@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127

*Counsel for Secretary of State*