IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| INDEPENDENT PARTY OF FLORIDA and PARTY FOR SOCIALISM AND LIBERATION,<br><br>Plaintiffs,<br><br>v.<br><br>LAUREL M. LEE, Florida Secretary of State, in her official capacity,<br><br>Defendant. | Case No. 4:20-cv-00110-MW-CAS |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

COME NOW The Independent Party of Florida ("Independent Party") and The Party for Socialism and Liberation ("Party for Socialism") (collectively the "Plaintiffs"), by and through their attorney of record, Daniel J. Treuden, and hereby respectfully oppose Defendant Laurel M. Lee's ("State") Motion to Dismiss. This opposition brief is filed pursuant to N.D. Fla. Loc. R. 7.1.

1

## STANDARD OF REVIEW

A motion under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the Complaint:

> As the Supreme Court has observed, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer* [*v. Rhodes*, 416 U.S. 232, 236 (1974)]. This Court has acknowledged that "a complaint should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.'" *Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 . . . (1957)).

*Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986).

Regarding the merits of this constitutional challenge to Florida's ballot access law, the court primarily follows the standard set out in *Anderson v. Celebrezze*, 460 U.S. 780 (1983):

> [A] reviewing court must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment[s]." [*Anderson*, 460 U.S. at 789.] Then the court must "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id*. Finally, the court must "determine the legitimacy and strength of each of those interests," while also considering "the extent to which those interests make it necessary to burden the Plaintiff's rights." *Id*.

> Further, if the state election scheme imposes "severe burdens" on the plaintiffs' constitutional rights, it may survive only if it is "narrowly tailored and advance[s] a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 . . . (1997). But when a state's election law imposes only "reasonable, nondiscriminatory restrictions" upon a plaintiff's First and Fourteenth Amendment rights, "a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (quotations omitted). In short, the level of the scrutiny to which election laws are subject varies with the burden they impose on constitutionally protected rights – "Lesser burdens trigger less exacting review." *Id.*

*Stein v. Alabama Secretary of State*, 774 F.3d 689, 694 (11th Cir. 2014).

Given that this case involves a ballot access question in a presidential election, Florida has a diminished interest in regulating this election: "[W]e recognized that 'the State has a less important interest in regulating Presidential elections than statewide or local elections, because the outcome of the former will be largely determined by voters beyond the State's boundaries.'" *Id.* at 691 (quoting *Anderson*, 460 U.S. at 795).

The sliding scale outlined in *Anderson* and recognized in *Stein* is important in considering the level of scrutiny that the Court must apply when balancing the competing claimed state interests and Plaintiff's

constitutional rights. The more burdensome the regulation in election or ballot access matters, the more stringent the test the State must meet, and in turn, the more likely a set of facts and circumstances exists entitling the Plaintiffs to relief. In a case where the regulation does not rationally further a state interest, strict scrutiny applies.

## ARGUMENT

The motion to dismiss asserts a failure to state a claim as to each of the two alternative means for minor parties to access the ballot. The first involves the one-percent signature requirement, and the State primarily relies on prior court cases that have previously upheld a one-percent signature requirement for ballot access. The State, however, fails to acknowledge *Green Party of Georgia v. Kemp*, 171 F.Supp.3d 1340 (N.D. Ga. 2016) (aff'd by *Green Party of Georgia v. Kemp*, 2017 U.S. App. LEXIS 1769 (11th Cir. 2017)) which struck down a one-percent signature requirement because the plaintiff in that case was able to show that the signature requirement was unconstitutionally burdensome.

The State also argues that the Plaintiffs failed to state a claim by taking a quotation out of context from ¶ 33 of the complaint. The

quotation refers to certification as being "relatively easy," which it is for all parties associated with a national committee. The State conveniently omits the last sentence of ¶ 33 which limits the breadth of the "easier path" comment. After reading the full paragraph in context, it is not reasonable to conclude that the Plaintiffs are asserting that affiliating with an FEC-recognized national committee is easy or convenient; quite to the contrary, the Plaintiffs assert that it is a significant burden.

Even more notable is the State's failure to explain how a minor party's affiliation with a national party recognized by the FEC as a national committee establishes the necessary "significant modicum of support" required for ballot access in Florida. (DE 8, p. 4.) One might understand that this requirement might establish a modicum of support *outside* of Florida, but it has no relation to the relevant modicum of support *inside* of Florida. This is evidenced by the fact that the FEC recognizes several parties as national committees that have no modicum of support in Florida because no minor party affiliates with them. The State's failure to justify this regulation requires the application of strict scrutiny under the *Anderson* balancing test.

## I. Plaintiffs' Challenge to Florida's One Percent Requirement States a Claim Upon Which Relief Can Be Granted.

The State relies primarily on three prior cases, each of which upheld a prior Florida's signature requirement, and requests dismissal on the grounds that the signature requirement in Florida is dispositively decided. Nothing could be further from the truth, as was recently made clear in *Green Party of Georgia v. Kemp*, 171 F.Supp.3d 1340 (N.D. Ga. 2016) where the district court struck down a one-percent signature requirement in Georgia. The district court in *Green Party* faced a pre-answer motion to dismiss similar to that which the State filed here, and the court granted that motion, only to have the Eleventh Circuit reverse and remand for further proceedings. *Id.* at 1345.

The *Green* district court described the procedural history in its recent order and taking note of it here is important because it serves as persuasive authority involving a substantially similar situation:

> The Court dismissed Plaintiffs' Complaint on July 17, 2012, concluding that because higher courts have held that the requirement under O.C.G.A. § 21-2-170 for a petition containing at least five percent of the registered voters for certain elections was not unconstitutional, the requirement that a presidential candidate's petition contain one percent of the registered voters would not be unconstitutional.

*Id.*

6

The district court then recounted several cases from the Supreme Court and the Eleventh Circuit Court of Appeals, including one of the cases upon which the State relies in its motion to dismiss, namely, *Jenness v. Fortson*, 403 U.S. 431 (1971). *Id.* and DE 8, p. 4. "[T]he Court of Appeals reversed and remanded, holding that this Court employed the type of 'litmus-paper test' that the Supreme Court rejected in *Anderson v. Celebrezze*, 460 U.S. 780, 780 . . . (1983), and directed this Court to instead apply *Anderson's* balancing approach." *Green Party of Georgia*, 117 F.Supp.3d at 1345 (quoting *Green Party of Georgia v. Georgia*, 551 F.App'x 982 (11th Cir. 2014) (hereinafter "*Green Party I*"). The Georgia district court then noted the key to the Eleventh Circuit's decision, namely "that this Court erred in dismissing Plaintiffs' action because past decisions 'do not foreclose the parties' right to present the evidence necessary to undertake the balancing approach outlined in *Anderson*.'" *Id.* (quoting *Green Party I*) and further citing *Bergland v. Harris*, 767 F.2d 1551, 1554 (11th Cir. 1985)).

After reversal, the parties in *Green Party of Georgia* submitted evidence and the case ultimately resolved on summary judgment. *Id.* at 1372. The crux of the decision is found when the district court compared

7

the burdens to ballot access considered in *Stein v. Alabama Secretary of State*, 774 F.3d 689 (11th Cir. 2014) to the burdens required by the Georgia election code. *Stein* involved an Alabama election code that required minor party candidates to obtain about 44,000 signatures to appear on the ballot as a party candidate, but allowed those same candidates to appear as an independent candidate with only 5,000 signatures. *Green Party of Georgia*, 171 F.Supp.3d at 1370. The *Stein Court* summarized this by saliently observing: "'[N]o one argues that Alabama's law keeps third-party candidates off the ballot, only that it makes it harder for them to communicate their party affiliation to voters.'" *Green Party of Georgia*, 171 F.Supp.3d at 1371 (quoting *Stein*, 774 F.3d at 696).

In contrast, the Georgia statute requires *identical* signature requirements for both minor party candidates and candidates running independently. *See Green Party of Georgia*, 171 F.Supp.3d at 1371. The Georgia district court recognized that "[t]his is the crucial difference between the Alabama laws upheld in *Stein* and the Georgia law that the Court strikes down here." *Id*. Because the signature requirement upheld in *Stein* did not prohibit the same candidates from ballot access

8

by submitting an independent candidate petition with only 5,000 signatures, the Eleventh Circuit held that the ballot access signature requirement was not an unconstitutional burden. By contrast, the Georgia statute was struck down because the burdensome signature requirement for minor political party candidates was the same as the requirement for independent candidates. *Id.* at 1371.

Florida similarly requires the same number of signatures for minor political party candidates as independent candidates, and consequently, for the same reasons the Georgia district court distinguished *Stein* from the facts it was considering, this court should similarly distinguish *Stein* here. This case requires examination of the Florida statutes as a whole. They must be considered in light of each other to determine whether there is a significant unconstitutional burden to ballot access. Complicating matters in this case is the fact that Florida allows minor political parties the opportunity to enjoy ballot access if they are associated with a party that might have a significant modicum of support *outside* of Florida. Fla Stat. § 103.021(4)(a). How that factors into the *Anderson v. Celebrezze* balancing test when considering the burden a one-percent signature requirement placed on candidates is

9

something that hasn't been considered before by any case the Plaintiffs can locate, and because it hasn't been considered before, it is impossible to say at this early stage that no set of facts exists such that the one-percent signature requirement and the affiliation requirement would not be struck down under the *Anderson* balancing test.

The Plaintiffs anticipate that this court will have to weigh the burden placed on a minor political party that is required to associate with others outside of Florida that is either already recognized by the FEC as a national committee or that can work to obtain enough national support to become FEC-recognized. It doesn't require a vivid imagination to envision that this requirement will be deemed a significant burden on Florida minor parties under the *Anderson* balancing test if the State can't justify the requirement as furthering the stated Florida interest that these ballot access regulations are designed to measure the modicum of support *inside the State of Florida*. And if this regulation cannot be justified, then all minor parties should be treated similarly and should be allowed to obtain ballot access by sending a certification to the Secretary of State.

10

Finally, the State points out that the Complaint lacks an allegation that the Plaintiffs attempted to and failed to obtain the requisite signatures. This is not fatal to the Complaint because it is the *burden* the statute imposes on the Plaintiffs that makes the statute unconstitutional. The Complaint sufficiently alleges that neither party can accomplish the heavy burden of obtaining over 132,000 valid signatures for ballot access, and the Plaintiffs will be able to submit evidence supporting that fact. Indeed, evidence has already been submitted to the record in support of the Plaintiffs' motion for preliminary injunction by the Declaration of Richard Winger that no candidate ballot access petition has ever succeeded outside of California that required at least 132,781 signatures. (DE 9-1, ¶ 42 and DE 9-4, Exhibit C.)

The Eleventh Circuit's *Green Party I* rule that plaintiffs should be given an opportunity to present evidence relevant to the *Anderson* balancing test is a sensible and sound one, because every state's election regulations are unique and are being frequently modified. In that vein, with the exception of *Stein* (which was distinguished above), each of the cases cited by the State to support their argument that the

11

one-percent signature requirement has already been dispositively decided were issued prior to Florida adopting the national affiliation requirement for minor party candidate ballot access. As outlined above, this change to ballot access regulations fundamentally altered the *Anderson* balancing test because the new rule undermines the State's proffered interest in requiring a modicum of support in Florida. For all of these reasons, the Plaintiffs state a claim that the one-percent signature requirement is unconstitutionally burdensome.

## II. The Claim Challenging the National Party Affiliation States a Claim Upon Which Relief Can Be Granted.

As the State admits, this "affiliation" requirement does not have the benefit of prior cases that rule directly on point: "Florida's alternative affiliation requirement for minor party access also survives scrutiny, albeit without the benefit of rather settled law." (DE 8, p. 2) (internal quotation omitted). But that is neither here nor there, because as discussed in the previous section, the courts are to give plaintiffs the opportunity to present evidence relevant to the *Anderson* balancing test whenever possible. Particularly apt here is the fact that the lack of relevant prior case law analyzing a national affiliation requirement in

12

lieu of a signature requirement actually plays in the Plaintiffs' heavy favor that they be given that opportunity here.

As a necessary background summary, the State articulated the purpose of these ballot access regulations as necessary to establish a significant modicum of support in Florida. (DE 8, pp. 4-5.) But the national affiliation requirement has no logical correlation to a minor party's level of Florida support; rather, it might only establish that there is significant support in states *other* than Florida. This is outlined in the Complaint at DE 1, ¶¶ 19-23.

There are seven minor political parties in Florida and there are six minor (non-Democrat/Republican) political parties recognized by the FEC as national committees. (DE 1, ¶¶ 20-21.) Four of the seven Florida minor political parties are associated with an FEC-recognized party: (1) Constitution Party of Florida, (2) Green Party of Florida, (3) Libertarian Party of Florida, and (4) Reform Party of Florida. *Id*.[1] That means if the three unaffiliated minor political parties wanted to access

---

[1] The State's motion states that five of Florida's seven minor political parties are associated with an FEC-recognized national committee, but it is actually four. The two Plaintiffs in this case and the Ecology Party of Florida are not associated with an FEC-recognized national committee.

13

the ballot using the affiliation requirement, they would be forced to associate with either the national Socialist Party or the national Natural Law Party, or alternatively, they would be forced to develop for themselves significant non-Florida support for the party. The Plaintiffs will be able to present evidence that both of these options constitute significant burdens on their First Amendment Rights, and in particular the right of political association.

Furthermore, the State misstates a reference out of context regarding the words "relatively easy" set forth in ¶ 33 of the Complaint. Reading the entire paragraph in context, the reference was clearly meant to show that it is only "relatively easy" *for parties that are already associated with an FEC-recognized national committee*. (DE 1, ¶ 33.) In those instances, the Chairman of the minor political party writes a letter to the Secretary of State certifying the names of the Presidential and Vice-Presidential candidates and lists the names for those candidates' slate of electors for the Electoral College. Fla. Stat. § 103.021(4)(a). Writing a letter is an easy burden to achieve ballot access, especially for a minor political party that is not required to put

14

forth *any* evidence of Florida electoral support for their place on the ballot by virtue of their national associations.

The State misconstrued the clear intent of these allegations, namely that the unconstitutional burden placed on the Plaintiffs in this case is to force them to associate with non-residents of Florida to access the ballot when this type of association has no logical correlation to furthering the State's interest in determining whether the party has a sufficient modicum of support in Florida. That burden is heavy because association with others is most critical in the political context. *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 224 (1989). Treating minor political parties differently based on who they associate with is an equal protection violation. And because the regulation is not reasonably related to the purpose of ballot access restrictions in Florida, the standard the *Anderson* balancing test requires is the most rigorous strict scrutiny test, not the "less rigorous application" suggested by the State. (DE 8, p. 12.)

The State suggests the court take judicial notice of Florida's statistics regarding party membership found at https://dos.myflorida.com/media/702728/1-by-party-by-county.pdf (last

15

accessed on April 8, 2020). The Independent Party has 106,580 members, while the membership of all other minor parties in Florida is a combined total of 44,692. This significant discrepancy exemplifies the problem with the national affiliation ballot access regulation. The Independent Party of Florida has more members than all other minor parties combined and is not considered to have sufficient modicum of Florida support worthy of a place on the presidential ballot.

The Independent Party, true to its name, seeks to control which candidates appear on the ballot as their nominee, and associating with a national party may circumvent their ability to nominate who they choose if the state party disagrees with the national party consensus. A party proceeding as a single-state minor party is not an uncommon or ineffective approach to exercising their rights to participate in a political election.

Howie Hawkins was nominated to be the Socialist Party USA candidate for President, but is also seeking the nomination of the Green Party. https://howiehawkins.us/howie-hawkins-wins-socialist-party-usa-nomination-green-candidate-seeks-to-build-left-unity-with-multiple-nominations/ (last accessed on April 8, 2020). Howie Hawkins' website

also indicates that he is seeking the nomination of several "state-level independent progressive parties." *Id*. These include the Peace and Freedom Party of California, the Progressive Party of Oregon, the Citizens and Labor parties of South Carolina, and the Liberty Union and Progressive parties of Vermont. *Id*. As the Supreme Court has said:

> This First Amendment freedom to gather in association for the purpose of advancing shared beliefs is protected by the Fourteenth Amendment from infringement by any State. . . . And the freedom to associate for the common advancement of political beliefs, . . . necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.

*Democratic Party of the United States v. Wisconsin*, 450 U.S. 107, 121-22 (1981) (internal quotations and citations omitted) (upholding the right of the Democratic National Committee to bar Wisconsin delegates from participation in the national convention if the Wisconsin open primary election violates the National Committee's convention rules).

The Independent Party's approach to these elections is a legitimate exercise of its constitutional right of association, and imposing ballot access requirements that would require them to abandon that approach is severely burdensome. Indeed, the Plaintiffs anticipate putting forth evidence that single state parties have nominated significant

17

candidates for office, the most notable of which is Donald J. Trump, who ran as a nominee for the American Independent Party of California in the 2016 election, an election he won (although he did not take California).

Florida's current statutory construct does not hold up to the Supreme Court's constitutional test set forth in *Anderson*, and the Plaintiffs' equal protection and other fundamental First Amendment rights are being violated by the unequal treatment and overly burdensome requirements placed upon them to gain ballot access.

## CONCLUSION

The Plaintiffs' Complaint states claims that are legally meritorious and factually robust – claims which should not be precipitously dismissed at this early litigation stage. The one-percent signature requirement requires over 130,000 signatures, and no one outside of California has ever achieved ballot access with a signature requirement that high. Furthermore, the requirement that a minor political party associate with an FEC-recognized national committee to obtain ballot access is also unconstitutional because the regulation is not even rationally related to serving the state interest on ballot restrictions, and

18

is therefore subject to the highest degree of scrutiny – especially since it treats similarly-situated, minor political parties differently solely based on how they exercise their First Amendment rights of political speech and association. For all of these reasons the State's presumptuous motion to dismiss should be denied.

Nevertheless, in the event this Court deems it necessary to dismiss any part of the Complaint, the Plaintiffs hereby respectfully request leave to amend the Complaint in order to cure any perceived deficiencies.

Dated this 10th day of April, 2020.

                                  Respectfully submitted,

                                  **THE BERNHOFT LAW FIRM, S.C.**
                                  Attorneys for Plaintiffs

                              By: /s/ Daniel J. Treuden
                                    Daniel J. Treuden
                                    Admitted *pro hac vice*

                                  1402 E. Cesar Chavez Street
                                  Austin, Texas 78702
                                  telephone: (512) 582-2100
                                  facsimile:  (512) 373-3159
                                  djtreuden@bernhoftlaw.com

## CERTIFICATE OF SERVICE

The foregoing document was served on the Defendant by the ECF system at the time of filing:

ashley.davis@dos.myflorida.com
Deputy General Counsel Ashley E. Davis

brad.mcvay@dos.myflorida.com
General Counsel Brad R. McVay

Attorneys for:
Laurel M. Lee, Florida Secretary of State
R.A. Gray Building, Suite 100
500 S. Bronough Street
Tallahassee, Florida 32399


Signed this 10th of April, 2020.


                                                /s/ Daniel J. Treuden
                                                Daniel J. Treuden