## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

THE INDEPENDENT PARTY OF
FLORIDA and THE PARTY FOR
SOCIALISM AND LIBERATION,
     *Plaintiffs*,                   CASE NO: 4:20-cv-00110-MW-CAS

v.

LAUREL M. LEE, Florida
Secretary of State, in her official capacity,
     *Defendant*.
_____/

## SECRETARY'S RESPONSE IN OPPOSITION TO
## MOTION FOR PRELIMINARY INJUNCTION

Defendant, Florida Secretary of State Laurel M. Lee, responds in opposition

to Plaintiffs' Motion for Preliminary Injunction (DE 9).  Minor political parties can

access Florida's General Election Ballot and, consequently have their presidential

candidate's names printed thereon by *either*: 1) affiliation with a national party; or,

2) by petitions signed by one percent (1%) of the state's electors (132,781).  *See*

Fla. Stat. § 103.021(4)(a) (affiliation) and (b) (petition).  Plaintiffs' Complaint

states only as applied challenges to the alternative access methods.  (DE 1 at 12)

(Prayer for Relief).  Plaintiffs' Motion however, states that the alternative methods

"are either unconstitutionally burdensome in their own right, or are applied in

violation of the equal protection clause."  (DE 9 at 13).  Whatever the attack, the

alternative petition and affiliation access methods are valid and should be upheld.

But for now, Plaintiffs have not clearly established their burden for preliminary relief and their Motion should therefore be denied.

## I.    STANDARD

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981).  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Keister v. Bell,* 879 F.3d 1282, 1287 (11th Cir. 2018) (collecting citations). The four requisites Plaintiffs "must clearly establish" are: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the [P]laintiff[s] outweighs the potential harm to the [D]efendant; and (4) that the injunction will not disserve the public interest." *Id.* (citations omitted). Notably, the rule governing preliminary injunctions "does not place upon the [non-moving party] the burden of coming forward and presenting its case against a preliminary injunction." *Alabama v. U.S. Army Corps of Eng'rs,* 424 F.3d 1117, 1136 (11th Cir. 2005) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 442 (1974)).

## II.    ARGUMENT

Rather than preserve the status quo pending trial, Plaintiffs seek to *upend* the status quo and have their candidates preemptively placed on the 2020 General Election Ballot without having to first establish their case.  This would be an extraordinary use of an already extraordinary preliminary injunction.  Moreover, the chaos and confusion it would cause outweighs the injury to Plaintiffs and disserves the public interest.  These last two factors of the injunction analysis do not typically decide the issue.  Here they may.  Nevertheless, Plaintiffs' claims should fail to succeed and this, either alone, or coupled with the weight of potential harm to election officials and the public and disservice to the public interest, should result in Plaintiffs' Motion being denied.

### A.  **Plaintiffs Are Not Substantially Likely to Succeed on the Merits; They Should Fail**

Plaintiffs are not substantially likely to succeed on the merits.  To the contrary, they should fail. *See e.g. U.S. Taxpayers of Fla. v. Smith*, 871 F. Supp. 426 (N.D. Fla. 1993) (upholding Florida's same 1% petition threshold), *aff'd*, 51 F. 3d 241 (11th Cir. 1995); *Beller v. Kirk*, 328 F. Supp. 485 (S.D. Fla. 1970) (upholding Florida's previous and *higher* 3% petition threshold for minor party statewide candidates), *aff'd mem.*, 403 U.S. 925 (1971).  *Libertarian Party of Florida v. State of Fla.*, 710 F. 2d 790 (11th Cir. 1983) (upholding *again* Florida's previous 3% petition threshold for minor party statewide candidates); *De La*

*Fuente v. Padilla*, 930 F. 3d 1101 (9th Cir. 2019) (upholding California's requirement to collect petitions of 1% of electors in the state within a 110-day period).

As a preliminary matter, Plaintiffs lack standing to challenge either alternative method of ballot access.[1]  As to the petition method, Plaintiffs have not alleged any injury caused by the state.  (DE 15 at 11) (conceding Plaintiffs have decided not to even try collecting petitions); *see infra* at B (evaluating the lack of state-inflicted injury).  As to the affiliation method, Plaintiff Independent Party's most recent governing documents require use of the petition method *only* for access to the presidential ballot.  Req. for Jud. Ntc. ¶ 1 (IND Rules) ("Article 8: Presidential Electors" "a candidate … shall initiate the need for a slate of Presidential Electors" as required by "103.021(4)(b)").  Moreover, it has to be initiated by a candidate, but there is no such candidate identified in this action. *See id.*  According to Plaintiff Party for Socialism and Liberation's most recent governing documents, it *is* "affiliated with the national party, Party for Socialism and Liberation."  Req. for Jud. Ntc. ¶ 4 (PSL Rules) (Article I of the Charter).  Minor parties are required to file these governing documents upon registration and

---

[1] Plaintiffs do not lack standing in light of
 *Jacobson v. Florida Secretary of State*, No. 19-14552, 2020 WL 2049076 (11th Cir. Apr. 29, 2020).  DE 29.  They lack standing based on their own positions, not the Secretary.

notify the Department of State of any changes within 5 days.  Fla. Stat. § 103.095(4).  Plaintiffs therefore lack standing.

Otherwise, the Court must engage in a three step process in evaluating ballot access requirements.  *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  Each step is addressed in turn.

### 1. Any Alleged Burden on Plaintiffs' Rights is Not Severe

This first step is an important one.  Ultimately, the "rigorousness" of the Court's inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights," *Burdick*, 504 U.S. at 435, *quoting Anderson*, 460 U.S. 780.  With that said, the first step is for the Court to "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789.  Here, Plaintiffs assert the right to be a minor party on the ballot.[2] That right is *not* fundamental.  *E.g.*, *U.S. Taxpayers of Fla.*, 871 F. Supp. at 429-

---

[2] Plaintiffs' other asserted rights either cannot be asserted by them, or are not implicated by the challenged laws.  *See* (DE 9 at 10, 12).  Plaintiffs do not include voters or candidates.  Nor do the party access alternatives directly implicate the "right to vote" or vote "effectively," or the "right to be a political candidate."  *Id.* As Plaintiffs point out, candidates frequently court the favor of several different parties, even for the same election.  *See* (DE 9 at 25) (*e.g.* Trump, Nader, Perot); (DE 9-1, ¶¶ 43-48).  The challenged alternatives do not infringe at all on a minor party's internal operations either.  The right "to control the determination of those candidates with which [a Plaintiff] associates," and to "control its nominations by controlling who may participate in such nominations," are therefore not implicated either.

30; *Anderson*, 460 U.S. at 787-88; *c.f.*, *Green Party of Georgia v. Kemp*, 171 F.

Supp. 3d 1340 (N.D. Ga. 2016) (finding voters' fundamental rights affected in

ballot access case where voters had *no* option of minor party on the ballot when

such parties were clamoring for a spot), *aff'd mem.* 674 Fed. Appx. 974, 2017 WL

429257 (11th Cir. 2017).

Now to the burden alleged by Plaintiffs.  It is "incumbent upon Plaintiff[s] to

point to specific facts" supporting the contention that the challenged laws are

"unconstitutionally burdensome."  *De La Fuente v. California*, 278 F. Supp. 3d

1146, 1151 (C.D. Cal. 2017), *aff'd* 930 F. 3d 1101 (9th Cir. 2019).  "Nothing in

*Anderson* suggests" the Court can make the "hard judgments" necessary to its

evaluation "without evidence of the severity of Plaintiffs' burdens."  *Stein v. Ala.*

*Sec'y of State*, 774 F. 3d 689, 696 (11th Cir. 2014).  It is "not the State's burden to

marshal evidence negating every … bare contention."  *De La Fuente*, 278 F. Supp.

3d 1151.  It is not readily apparent from Plaintiffs' Motion what their specific

burdens are, although they state they are "severe."

As to the national affiliation alternative, Plaintiffs simply rest on their lack

of *desire* to affiliate with a national party.  Plaintiff Independent Party simply

"desires to be [i]ndependent from any national organization."  (DE 9 at 23) (citing

Bach Decl.).  And Plaintiff Party for Socialism and Liberation simply disclaims

affiliation with the national Socialist Party.  (DE 1, ¶ 22).  No reason is given for their lack of affiliation.

Plaintiffs make no argument and put forth no facts that indicate affiliation with a national party, or becoming a national party in their own right, is at all difficult or that they have even tried.  To the contrary, their evidence indicates that every other current Florida minor party but one has done so.  (DE 1, ¶¶ 20-23).  Four out of the seven minor parties in Florida are affiliated with national parties and may therefore certify their presidential candidates for ballot placement on the 2020 General Election Ballot.  *Id.*  Minor parties in Florida have done so in the past with success as well.  *See* (DE 9-1).  Since the current alternatives have been in place, ten (10) minor parties accessed Florida's ballot by certifying affiliation in 2012 and four (4) accessed it in 2016.  (DE 9 at 8) ("*all* minor political parties" in Florida were on the 2012 ballot); Req. for Jud. Ntc. ¶ 8 (Candidate Listing).  Interestingly, Plaintiff Party for Socialism and Liberation was one of those minor parties on the 2012 ballot.  (DE 9 at 22); Req. for Jud. Ntc. ¶ 8 (Candidate Listing).  A many and varied other minor parties have accessed the ballot by affiliation in every presidential election since 2000. *See* Req. for Jud. Ntc. ¶ 8 (Candidate Listing).[3]  In all of those years, the two major parties were also on the ballot, along

---

[3] From 2000 to 2016: Prohibition Party, Constitution Party, Libertarian Party, Florida Socialist Workers Party, BTP, America's Party of Florida, Party for Socialism and Liberation – Florida, Green Party, Socialist Party of Florida,

with some combination of no-party-affiliated (NPA) and write-in candidates.  *Id.* (Candidate Listing).  Voters have never been short on choice in Florida, even looking at minor party choices alone.  The affiliation method does not impose severe burdens.

Nor is it discriminatory.  Plaintiffs argue that the affiliation method discriminates *amongst* minor parties because national party affiliation is "not rationally related to the level of support that a party has in Florida" or "any interest in regulating access to the Presidential ballot."  (DE 1 ¶¶ 34-35); (DE 9 at 33).  Plaintiffs do not allege that minor parties are treated poorly compared to major parties or any other group.  Plaintiffs instead allege the discrimination occurs within minor party status itself.  But, *all* minor parties must show a significant modicum of support before Florida must place them on its ballot.  *E.g. Jenness v. Fortson*, 403 U.S. 431, 442 (1970).  Minor parties have two methods of doing so. Fla. Stat. § 103.021(4)(a)-(b).  They may show support within the state by gathering petitions, or they may show support nationally, acknowledging that presidential elections are decided by all states, and not just Florida.

As to the alternative petition method, Plaintiffs simply do not *want* to engage even their own *members* (or other volunteers), to circulate petitions, instead

---

Ecology Party of Florida, Objectivist Party, Reform Party, The Natural Law Party, Workers World Party, Justice Party of Florida, Peace and Freedom Party.

alleging an estimated $100,000 burden to "hire and train sufficient laborers" to do it instead. (DE 1 ¶ 26); (DE 9 at 27).  No reason is given why Plaintiffs' members or other volunteers cannot meet the petition threshold themselves, or why they cannot raise sufficient contributions to hire the professionals.  Plaintiffs' membership numbers, the alleviating factors recognized in *Libertarian Party* and *U.S. Taxpayers of Florida*, and the *four* years they have to collect signatures belies any argument to the contrary.  *See* (DE 8 at 6-10)[4].  So does the Eleventh Circuit's analysis in *Stein*.  (DE 8 at 8-9).  In *Stein*, the Eleventh Circuit *rejected* a minor party's argument that the cost of $100,000 to $200,000 to pay signature gatherers in time for placement on Alabama's presidential ballot, among other reasons, made the burden severe.  *Stein v. Ala. Sec'y of State*, 774 F. 3d 689, 697 (11th Cir. 2014).

If a "reasonably diligent candidate can be expected to satisfy the signature requirements," then the burden is not severe, and the State's interests will generally be a sufficient justification. *Libertarian Party of Florida*, 710 F. 2d at 793 (quoting *Storer v. Brown*, 415 U.S. 724, 742 (1974)).  Plaintiffs have failed to show the contrary; indeed, they have failed to even *try* the petition method.

To be fair, no other minor party in Florida seems to have tried, but that is most likely because all but one are affiliated with a national party and therefore do not have to collect petitions.  Or, it could be that voters have enough choice and are

---

[4] The Secretary incorporates her Motion to Dismiss (DE 8) by reference.

therefore uninterested in signing a petition to place *another* choice on the ballot. *See Del La Fuente v. Padilla*, 930 F. 3d 1101, 1105-06 (9th Cir. 2019) (noting Winger, the expert in that case (and this case), "suggested that 'there's almost nobody left to petition' because voters have their choice" among several other major and minor party candidates).  Plaintiffs acknowledge however, that a presidential candidate has achieved placement via a 1% petition threshold.  (DE 9-1, ¶ 42); (DE 9-4) (Ross Perot, California 1992).  It can and has been achieved.

But Plaintiffs are wrong when they (and their expert) state that "[e]xcept" for that candidate in California, no one "has ever overcome a petition requirement [as] high" as 1%. (DE 9-1, ¶ 42); (DE 9 at 32).  In 1996, the same candidate achieved placement on Florida's presidential ballot by either being affiliated with a national party *and* meeting a 3% signature requirement, or meeting the same 1% requirement here.[5]  Req. for Jud. Ntc. ¶ 8 (Candidate Listing) (Ross Perot Reform Party); Fla. Stat. § 103.021(3),(4) (1995).  Another minor party that year seems to have done the same.  Req. for Jud. Ntc. ¶ 8 (Candidate Listing) (Harry Browne Libertarian Party).

But they are not even the only candidates in Florida to have done so.  Florida has the same, alternative 1% petition threshold for statewide candidates to access

_____

[5] We cannot tell from the records which method was actually used, but the point is that each access method available at that time was as difficult *or more* difficult than the current alternative methods.

the ballot as well.  Fla. Stat. § 99.095(2)(a).  In 2010, candidate Kendrick Meek

successfully attained ballot placement for election to the Office of United States

Senate by collecting the requisite petitions from 1% of Florida's voters.  Req. for

Jud. Ntc. ¶ 9 (Candidate Listing U.S. Senate 2010).  The chart[6] prepared by

Plaintiffs' expert seems to have altogether missed the second candidate who

achieved access in 1996, and the statewide candidate who achieved access in 2010.

(DE 9-4) (noting by asterisk that the requirement in 1995 "has since been amended

to require *fewer* signatures").

Petitioning generally is a regular occurrence in Florida.  For the 2020

General Election Ballot, four initiative petition sponsors have successfully attained

position for their proposed constitutional amendments by, among other things,

collecting signed petitions.  Req. for Jud. Ntc. ¶ 10 (2020 Initiatives).  The petition

threshold is higher for initiative petitions than for candidates or minor parties.

---

[6] States' ballot access schemes vary greatly, even over time, considering their
frequent litigation.  Some states put restrictions on when and from whom
signatures can be gathered.  *E.g. Green Party of Georgia*, 171 F. Supp. 3d at 1347
(requiring circulator affidavit that signatures gathered "within the 180 day"
window).  Florida, by comparison, does not.  *See Libertarian Party of Florida*, 710
F. 2d at 794-95 (giving examples of different restrictions on signature gathering
and concluding Florida's lack of restrictions in this regard made its scheme very
different).  The chart presented by Plaintiffs' expert is therefore attempting to
compare apples to oranges.  The closest petition scheme to Florida's may just be
California's 1% threshold.  But even there, California requires petitions to be
collected solely within a 110-day window.  *De La Fuente*, 278 F. Supp. 3d at 1148-
49 (explaining section 8403 of California's Election Code).  In Florida, parties and
candidates have 4 years.  Rule 1S-2.045(1)(b) and (5)(9); Fla. Stat. § 99.095(2)(a).

Initiative petition sponsors must collect petitions "signed by a number of electors in each of one half of the congressional districts of the state, and of the state as a whole, equal to eight percent of the votes cast in each of such districts respectively and in the state as a whole in the last preceding [presidential] election."  Fla. Const. art. XI, § 3; Fla. Stat. § 100.371.  That means that *each* of the four sponsors who attained ballot placement collected 766,200 signed petitions.  Moreover, each signature they collected only had a 2-year shelf life.  Fla. Stat. § 100.371(11).  Voters also regularly sign candidate petitions.  In the last qualifying period (for U.S. Representative, judicial, state attorney, and public defender candidates ending on April 24, 2020), *see* sections 99.061 and 105.031, Florida Statutes, 32 candidates qualified by the petition method.  (Matthews Decl. ¶ 10).  Throughout Florida, there are voters who are ready, willing, and able to sign petitions.

Nevertheless, Florida's petition method for minor party access is not severe as a matter of law.  The Supreme Court has noted that "gathering 325,000 signatures in 24 days would not appear to be an impossible burden" or an "impractical undertaking for one who desires to be a candidate for President." *Storer v. Brown*, 415 U.S. 724, 740 (1974) (remanding to determine whether the 24-day collection period or pool of available signatories is diminished by other requirements to render the threshold too great in fact); *De La Fuente*, 278 F. Supp.

3d 1146, 1155 (C.D. Cal. 2017) (finding 267,058[7] signatures in California's 105-day window is not a severe burden), *aff'd* 930 F. 3d 1101 (9th Cir. 2019).

A ballot access law imposes a severe burden only if it "*freeze*s the status quo by effectively barring all candidates other than those of the major parties" and does not "provide a realistic means of ballot access." *Libertarian Party of Florida v. State of Fla.*, 710 F.2d 790, 793 (11th Cir. 1983) (emphasis added). Indeed, the "primary concern is with the tendency of ballot access restrictions to limit the field of candidates from which voters might choose." *Anderson*, 460 U.S. at 787. In no way has Florida's alternative access methods limited voters' choice. To the contrary, they have allowed many and varied minor parties to access Florida's ballot in every presidential election. *See* Req. for Jud. Ntc. ¶ 8 (Candidate Listing); *supra* n.2. The methods are therefore not severe. Rather, they are "reasonable, nondiscriminatory restrictions" to be evaluated with lesser scrutiny. *Anderson*, 460 U.S. at 788.

2. Florida's Interests Are Important

Second, the Court "then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. Florida's interests are the well-settled and important

---

[7] This number was 50% over the actual requirement that year, but was nevertheless entertained to show an even greater number would still be "within the realm of reason." *Id.*

interests "in requiring some preliminary showing of a significant modicum of support," which includes, at least, "avoiding confusion, deception, and even frustration of the democratic process at the general election."  *Jenness v. Fortson*, 403 U.S. 431, 442 (1970); *Storer*, 415 U.S. at 731 (reiterating "strong interest" in "maintaining the integrity of the political process by preventing interparty raiding"); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 352 (1997) (reiterating "valid state interest in ballot integrity and political stability"). "[B]ecause, it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."  *Anderson*, 460 U.S. at 788 n.9.

After its decision in *Anderson*, the Supreme Court had the opportunity to again assess ballot access requirements in *Munro v. Socialist Workers Party*, 479 U.S. 189 (1986).  The Court took that opportunity to again make "clear" that "while there is no litmus-paper test for deciding a case like this," the Court had already "establish[ed] with unmistakable clarity [in several cases] that States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot." *Munro*, 479 U.S. at 193-94 (internal citations omitted).  Again, the Court "reaffirm[ed] that principle." *Id.* Then in *Burdick*, the Court *again* reaffirmed that "the State is within its rights to reserve the general election ballot for major struggles and not a forum for continuing intraparty feuds."  *Burdick v. Takushi*, 504 U.S. 428, 439 (1992)

(internal quotations omitted).  The Court has affirmed again and again the same interests Florida relies on here.

Plaintiffs put forth a national interest that they purport "diminishe[s]" any interest Florida has because the outcome of a presidential election "will largely be determined by voters beyond the State's boundaries."  (DE 9 at 3).  That may not be true for a state like Florida.  Plaintiffs ignore that Florida has an outsized share of the outcome in the 2020 presidential election.  Florida is the third largest state by population and tied for third largest state by electoral college votes.  Nor would the "national interest" matter to Plaintiffs who are strictly one-state parties.  (DE 9, 23-25).  No reason is given why it is in the national interest for a candidate to be on each state's ballot under a *different* party, which is the reason Plaintiffs allege one-state parties are important.  *See* (DE 9 at 23-25); (DE 9-1, ¶¶ 43-48).  The "primary function of elections is to elect candidates" not give minor party voters "satisfaction knowing that he or she has helped to boost the candidate's total." *Libertarian Party v. District of Columbia*, 768 F. Supp. 2d 174, 186 (D.C. Cir. 2011).  The "national interest" is only "but one factor" in the analysis anyway. *Nader v. Connor*, 332 F. Supp. 2d 982, 988 (W.D. Tex. 2014).

Nevertheless, Florida accounts for those minor parties that may not have a significant modicum of support within its own borders, but enjoy support nationally.  It does so by the alternative affiliation method.  *Cf. Green Party of*

*Georgia v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016) (finding that "in this case" the state's interest "is not sufficiently important to justify" the restrictions because the "interest is outweighed by a national interest" that *Georgia* did not account for), *aff'd mem.* 674 Fed. Appx. 974, 2017 WL 429257 (11th Cir. 2017).

Regardless of whether a minor party can gather enough support within Florida with the petition method, it can still access Florida's ballot by certifying[8] that it is affiliated with a national party.  According to Plaintiffs, that means placing its candidates for president and congress on the ballot, "under the party label, in several states" and being "organized throughout the United States."  (DE 9-1, ¶ 19); (DE 9 at 23).  And, according to Plaintiffs, "six minor parties" could "qualify for ballot access in Florida by virtue of their FEC [Federal Election Commission] national committee recognition."  (DE 9 at 21-22). "[O]nly four of those parties" are already minor parties in Florida, leaving another *two* minor parties that could

---

[8] Plaintiffs assert that a 2011 letter from Defendant indicated that Defendant would not enforce the requirement that a minor party be affiliated with a national party. (DE 9 at 7). Plaintiffs' description is somewhat misleading in that it implies that Defendant indicated she would not follow the law. Rather, the letter accurately stated that the role of Defendant as a qualifying officer is not to investigate the truthfulness of a candidate or party's assertions as to its qualifications and, if paperwork is complete on its face, such qualification is to be made. (DE 9-3) *citing David ex rel. Taylor v. Crawford*, 116 So. 41, 42 (Fla. 1928). An interested party can challenge the qualification decision and the truth and accuracy of assertions made in the paperwork. *See generally Reform Party of Fla. v. Black*, 885 So. 2d 303, 304-05 (Fla. 2004). Defendant never, in the 2011 letter or otherwise, indicated that she would not follow the law or that the 2011 definition of "national party" was to be ignored or disregarded.

access Florida's ballot by affiliation if they so choose. *Id.* at 22. Indeed, the burden to do so would be slight. With "as few as three Florida residents" those two parties "could obtain immediate access to the 2020 Presidential ballot." *Id.* Not because of Florida support, *per se*, but rather national support sufficient to participate in a national election.

Florida does not need to make any particularized showing in support of its interests related to requiring a showing of a significant modicum of support. *Swanson v. Worley*, 490 F. 3d 894, 912 (11th Cir. 2007), *citing Munro v. Socialist Workers Party*, 479 U.S. 189, 195-96 (1986); *Stein v. Ala. Sec'y of State*, 774 F. 3d 689, n.17 (11th Cir. 2014). The Court made clear in *Munro*, that "[w]e have never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." 479 U.S. at 194-95 (rehashing its prior precedent in abundant clarity). Such a requirement would be unwieldy, "invariably lead[ing] to endless court battles over the sufficiency of the 'evidence' marshaled by a State to prove the predicate." *Id.* at 195. Moreover, it "would necessitate that a State's political system sustain some level of damage before the legislature could take corrective action." *Id.* But, legislatures, the Court thought, "should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is

reasonable and does not significantly impinge on constitutionally protected rights." *Id.* at 195-96. Again, in *Timmons*, the Court reiterated that "[e]laborate, empirical verification of weightiness is not required." 520 U.S. at 352.

Against this authority, Plaintiffs cite two cases to support their proposition that Florida must put forth "evidence that the problem the state is asserting is real." (DE 9 at 17). In the first case, *Reform Party*, the court did not reject the state's interests due to lack of evidence put forth in support. *Reform Party of Allegheny Cnty. v. Allegheny Cnty Dep. Of Elections*, 174 F. 3d 305, 315 (3d Cir. 1999). To the contrary, the state "ha[d] identified justifications, such as preventing ballot manipulation and preserving political stability, that were recognized in *Timmons* to be legitimate state interests." *Id.* Simply identifying well-recognized interests was sufficient. *Id.* What the state did *not* do was engage in the *next*, third step in *Anderson*. *Id.* Indeed, what the court found insufficient was that the state "ha[d] not demonstrated how these interests are served by the unequal burden imposed [t]here." *Id.* Florida addresses that final step below. The second case Plaintiffs cite, *Blackwell*, merely cites back to the first case (*Reform Party*) and another case, *Edenfield v. Fane*, 507 U.S. 761 (1993), that involved commercial speech and not ballot access. *Libertarian Party of Ohio v. Blackwell*, 462 F. 3d 579 (6th Cir. 2006). The court in *Blackwell* did not at all address the authority holding the contrary either.

Nevertheless, Florida does have evidence. Prior to 2012, when less-restrictive requirements governed the minor parties, one individual formed 40 different parties in a year and a half. Req. for Jud. Ntc. ¶ 11 (Larose Filings). Even under the current ballot access methods, there have been as many as ten (10) minor parties on the ballot with NPA candidates and major party candidates. From 2000 to 2012, there have been three (3) different minor parties on the ballot with "Socialist" or "Socialism" in the name. *See supra* n.3. If Florida's ballot access methods were any more lenient, there would only be more.

### 3. Florida's Alternative Access Methods Serve its Interests

Third, "[i]n passing judgement," the Court "must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 780. "States are free to adopt differing means of regulating ballot access, as long as the particular scheme is not unnecessarily burdensome." *Libertarian Party of Fla.*, 710 F. 2d 790, 793 (11th Cir. 1983). "[L]esser burdens…trigger less exacting review." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Indeed, when only "reasonable, nondiscriminatory restrictions" are imposed upon the rights of voters, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Anderson*, 460 U.S. at 788.

The Eleventh Circuit has upheld Florida's previous 3% petition requirement for statewide and local candidates as "a rational way to meet" the same "compelling state interest" Florida has put forth here. *Libertarian Party of Fla. V. Fla.*, 710 F. 2d 790, 793 (11th Cir. 1983); *Swanson v. Worley*, 490 F. 3d 894, 903-04 (11th Cir. 2007) (relying on lessor scrutiny set in *Libertarian Party* in again upholding a 3% threshold (Alabama)). The Court should do the same here as to both of Florida's alternative methods because they are not only "rationally related to," but directly further its interests in requiring a significant modicum of support proportionate to its large population and significant share of presidential electors.

Minor parties in Florida are those that, among other things, "which on January 1 preceding a primary election does not have registered as members 5 percent of the total registered electors of the state." § 97.021(19), Fla. Stat.  Less than five percent of the registered electors in the state is not indicative of a significant modicum of support.  The alternative petition method therefore requires minor parties to gather signed petitions from 1% of the registered electors in the state who would like to see that party on the ballot.  This threshold is within the range of petition requirements upheld by the Supreme Court and the Eleventh Circuit as sufficiently justified by the well-recognized interests in requiring a significant modicum of support.  *E.g. Libertarian Party of Fla. v. Fla.*, 710 F. 2d 790 (11th Cir. 1983); *Cartwright v. Barnes*, 304 F. 3d 1138, 1140 (11th Cir. 2002)

(upholding Georgia's same 5% threshold within 6-month period that was upheld in

by the Supreme Court in *Jenness*).   Indeed, in *Burdick*, the Supreme Court noted

that on at least three prior occasions, it had previously upheld "petition signature

requirements that were as burdensome or more burdensome than Hawaii's one

percent requirement." 504 U.S. 428, n.3 (1992).  And in *U.S. Taxpayers of Florida*

*v. Smith*, 871 F. Supp. 426, 423-33 (N.D. Fla. 1993), *this* Court made the same

observation when upholding the *same* 1% threshold for minor parties to access the

presidential ballot at issue here.  "The Supreme Court has previously upheld party

and candidate petition signature requirements that were as burdensome or more

burdensome than Florida's one percent requirement."  *Id.*, *aff'd mem.*, 51 F. 3d 241

(11th Cir. 1995).

Minor parties are defined only by their status in Florida.  In order to account

for whatever "national interest" there may be in presidential elections, Florida

therefore allows minor parties to show a significant modicum of support

*nationally*, through affiliation with a national party.  The Secretary does not

determine whether or not a minor party is in fact so affiliated.  The affiliation

requirement only requires the minor party to certify to her that it is indeed

affiliation with a national party.  She must take that certification at face value.

How the FEC determines national status, based on Plaintiffs' own showing,

seemingly requires a sufficient showing of a significant modicum of national

support.  Indeed, Plaintiffs describe the national affiliation method as "really amount[ing] to significant support *outside* of Florida."  (DE 9 at 31-32). Specifically, by requiring the party to first place its candidates "on the ballot in several states" and be "organized across the nation."  (DE 9 at 23).  Plaintiffs expert even opines that this is so. (DE 9-1, ¶¶ 19-21).

Plaintiffs' point that national affiliation does not have any "logical correlation to showing any modicum of electoral support in *Florida*," is therefore beside the point.  (DE 9 at 33) (emphasis added); *id.* at 20 (Florida support is unrelated to FEC's determination); *id.* at 23 (FEC does "not consider[] particular states' interests").  Florida offers the alternative petition method for minor parties to show *Florida* support.

Plaintiffs otherwise focus primarily on one interest – preventing a "confusing and unwieldy ballot."  (DE 9 at 14); *id.* at 4-5 ("the sky did not fall and voters were not befuddled over the number of choices on the ballot"); *id.* at 8 ("the number of candidates based on actual experience are not so numerous to make a typical voter confused or make it difficult for them to locate their candidate of choice").  Preventing a lengthy ballot is only *one* part of a state's well-recognized interests in requiring a significant modicum of support.  *See* (Matthews Decl.). More meaningful here may be that the "function of the election process is 'to winnow out and finally reject all but the chosen candidates,' … not to provide a

means of giving vent to 'short-range political goals, pique, or personal quarrels.'"
*Burdick*, 504 U.S. 428, 438 (1992) *quoting Storer*, 415 U.S. at 735.

Plaintiff Party for Socialism and Liberation has existed for 12 years, yet has only 683 members. Req. for Jud. Ntc. ¶¶ 5, 7.  Over its 12 years, it has raised a total of only $6,566 in contributions.  Req. for Jud. Ntc. ¶ 6.  Plaintiff Independent Party has existed for at least 24 years and has 106,580 members, yet it has raised a total of only about $19,378 in contributions in the 21-year period of the Divisions' records.  Req. for Jud. Ntc. ¶¶ 2-3, 7.  The fact that it even has over one hundred thousand members may be more about voter registration applicants confusing "independent," *i.e.* "NPA," and being a member of the Independent Party, than wanting to register as *any* party's member.  (Matthew Decl. ¶¶ 5-7).  Plaintiffs have not placed candidates on the ballot in any other race.  There is a dearth of evidence that they even have the internal structure to do so.  *See* (DE 20-2) (corrected Bach Decl.); (DE 9-8) (Ellis Decl.).  Nor is there evidence that Plaintiffs engage in any significant party activity like voter registration or any form of candidate campaigning.  *Id.*

Plaintiffs also just use the wrong level of scrutiny in analyzing their claims. They argue that because the alternative access methods are allegedly "not narrowly tailored" to further Florida's interests, the Plaintiffs are likely to succeed.  (DE 9 at 34).  "Strict scrutiny is not triggered by the existence of a less burdensome

restriction—it is triggered only when the challenged regulation itself imposes a severe burden." *Acevedo v. Cook Cty. Officers Electoral Bd.*, 925 F.3d 944, 946–47 (7th Cir. 2019).  Under lesser scrutiny, what is "unnecessarily burdensome" is not measured by the "least drastic means test," but rather, by whether the requirement is a "rational way" to meet the stated interests.  *Libertarian Party of Florida v. State of Fla.*, 710 F.2d 790 (11th Cir. 1983).  Florida's access alternatives do at least that.

### 4. The Weight of Authority Goes Against Plaintiffs' Best (But Distinguishable) Case

Against the weight of authority upholding ballot access schemes that are as or more burdensome than Florida's, Plaintiffs cite *Green Party of Georgia v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016), *aff'd mem.* 674 Fed. Appx. 974, 2017 WL 429257 (11th Cir. 2017).  (DE 9 at 9-10, 13, 19, 28-29).  *Green Party* is a district court decision invalidating Georgia's 1% petition requirement that was affirmed by the Eleventh Circuit in a one-line, unpublished memorandum affirmance.  In *Green Party*, the district court applied strict scrutiny upon a particular finding that cannot be made here.

Georgia's ballot access restrictions are distinguishable.  Georgia required signatures be collected within 180 days.  *Green Party*, at 1347.  Here, minor parties have four years.  Petition circulators in Georgia also had to, "on each sheet" of the petition, subscribe and swear before a notary public that the signatures were

in fact collected within that window. *Green Party*, at 1347. Additionally, the court found that "[s]ince 2000, no independent or third-party candidate ha[d] qualified by petition" in Georgia. *Id*. at 1347. Candidates were actively trying and failing despite significant national support and placement on many other states' ballots. Ralph Nader, for example, was on the ballot in 45 other states – including Florida – in the 2008 election, but could not achieve access under Georgia's scheme. Here, Plaintiffs concede that many and varied minor parties regularly appear on Florida's ballot.

The court in *Green Party* did not evaluate the Eleventh Circuit's opinions in *Libertarian Party*, *Swanson, Cartwright*, or *U.S. Taxpayers* either. No more than short shrift was given to any of those cases. Importantly, when deciding to apply strict scrutiny – a finding that largely determines the outcome – the court expressly "look[ed] to the decisions of the Sixth and Ninth Circuit Courts of Appeals," but even then, only those opinions that found *strict* scrutiny to be appropriate. *Green Party*, 171 F. Supp. 3d at 1363-64. And significantly, the Ninth Circuit Court of Appeals in *De La Fuente v. Padilla* later affirmed a district court decision that upheld California's 1% signature requirement, and where the district court expressly distinguished *Green* based on the effect of the Georgia regulations being a "consistent dearth of presidential candidates from outside of the Democratic and Republican parties" on the ballot in Georgia, which was not the case in California.

25

*See De La Fuente v. State*, 278 F. Supp. 3d 1146, 1154-55 (C.D. Cal. 2017), *aff'd De Le Fuente v. Padilla*, 930 F. 3d 1101 (2019).[9]  The appellate court agreed with the district court's analysis in a written analysis of its own, stating "[t]he inclusion of minor party candidates also distinguishes this case from others where courts have applied strict scrutiny. *See, e.g.*, *Green Party of Georgia v. Kemp*…".  *De La Fuente*, 930 F. 3d at 1106.

The court in *Green Party* did evaluate the Eleventh Circuit's decision in *Stein* upholding Alabama's 3% petition threshold.  *Green Party*, 171 F. Supp. at 1170-72.  But the court in *Green Party* distinguished Georgia's 1% threshold under review because unlike Alabama's generous time frame for collection, Georgia required collection "within 180 days."  171 F. Supp. 3d at 1371-72.  Florida allows collection within 4 years, making it more akin to Alabama's requirement that was upheld under lesser scrutiny than Georgia's requirement.  "More importantly," the court in *Green Party* found, minor parties were able to and did access Alabama's ballot.  171 F. Supp. 3d at 1371.  "Thus, Alabama's law does not implicate *Anderson's* 'primary concern,' viz., 'the tendency of ballot access restrictions to limit the field of candidates from which voters might choose'" the court concluded.  "But that is precisely *this* Court's concern with Georgia's ballot

---

[9] The *De La Fuente* district court decision is discussed further below as it relates to the additional similarity of lack of effort in utilizing available channels by the candidate seeking access.

access restriction. In *Stein*, the voters of Alabama were not burdened in the same way as Georgia voters. Alabama voters were still able to vote for candidates outside the two major parties." *Green Party*, 171 F. Supp. 3d at 1371.  On this point too, Florida's petition threshold is like that of Alabama's.  Voters' choice is plentiful in Florida.

The barriers to Plaintiffs' ballot access may be more attributable to their deficiencies as a party than Florida's challenged access alternatives.  Indeed, their lack of volunteer support and financial contributions, even from members, are a good indication that they ultimately lack a modicum of support necessary for ballot placement.  Plaintiffs are not at all likely to succeed on the merits.

## B. <u>Potential Harm to the Defendant Outweighs the Injury to Plaintiffs, Which is Not Irreparable Here</u>

Plaintiffs' harm, given that they simply do not *want* to affiliate with a national party or rely upon member or volunteer petition gatherers, and have *not even tried* to do so, is $100,000.  That is because Plaintiffs' harm is caused by their choices, not any requirement imposed by the state.  *See De La Fuente v. State*, 278 F. Supp. 3d 1146, 1152-53 (C.D. Cal. 2017), *aff'd* 930 F. 3d 1101 (2019).

In *De La Fuente*, the district court evaluated much of the same circumstances present here, when determining whether California's same 1% petition requirement and its 110-day collection window were valid.  Indeed, the

plaintiff candidate in that case, "Rocky" De La Fuente,[10] like Plaintiffs here,

"decided against even attempting to collect signatures" because it was allegedly

cost prohibitive and made no effort to enlist volunteer circulators.  *Id*. at 1152-53.

Also like Plaintiffs here, De La Fuente collected insignificant contributions.

*Compare id.* at 1153 ($17,215.13) *with* (IND Finance) ($3,000 collected by

Independent Party since the 2016 General Election) *and* (PSL Finance) ($3,600

collected by Party for Socialism since the 2016 General Election).  The district

court therefore found that the "barriers" to De La Fuente accessing California's

presidential ballot, were "deficiencies in his candidacy," most prominently a lack

of voter interest and enthusiasm," and not the challenged laws.  *Id.* at 1153.  This,

the district court concluded, was not the state's concern; it was "under no

obligation to provide [De La Fuente] with an easy path to the general election

ballot or to help him overcome" those deficiencies.  *Id.*

    Likewise, Plaintiffs' harm here is therefore not the generally irreparable

harm of denial of ballot access, because their harm is not caused by the state.  To

be sure, Florida is "not burdened with a constitutional imperative to reduce voter

apathy or to 'handicap' and unpopular candidate to increase the likelihood that the

candidate will gain access to the general election ballot."  *Munro v. Socialist*

---

[10] De La Fuente was *on* Florida's presidential ballot in the same year at issue in
that case – 2016.

*Workers Party*, 479 U.S. 189 (1986).  Plaintiffs' alleged harm is due more likely a lack of voter enthusiasm or internal motivation than to the challenged access methods, and amounts to, at most, the $100,000 they estimate it would take to get on the ballot.

Weighed against that harm is the harm to voters, other candidates and parties in having two parties on the ballot that have made no showing to support ballot access.  *See supra*.  Plaintiffs do not want to affiliate with a national party.  Nor do they want to even try to gather petitions.  Plaintiffs have collected only insubstantial contributions throughout their existence and there is a dearth of evidence that they even engage in the traditional functions of a political party, or even have articulable platforms from which to derive political change or govern. Moreover, voters could simply confuse "IND," the abbreviation on the ballot for Plaintiff Independent Party, the way they regularly confuse "Independent" for "NPA" when choosing a party for their voter registration.  (Matthews Decl. ¶¶5-7). This may further exacerbate the "party raiding" Florida has an interest in preventing, in order to ensure the winner is the preference of a majority and to maintain political stability.  *See e.g. Storer v. Brown*, 415 U.S. 724, 731 (1974); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 352 (1997). These latter harms are substantially more than Plaintiffs' harm.  Plaintiffs' harm does not therefore outweigh the Secretary's harm.  The reverse is true, and greatly so.

**C.** **Preemptively Placing Plaintiffs' Candidates on the Ballot Disserves the Public Interest**

The public has a right to some assurance that the candidates on the ballot have first shown a significant modicum of support.  *See supra.*  Granting Plaintiffs access to the 2020 General Election Ballot *without* that assurance wholly undermines that important interest.  It also creates additional harm to the public identified in section B.  Moreover, the result would be to allow two completely unknown candidates to be placed there with Plaintiffs.  Plaintiffs have not offered who exactly their candidates will be and it is therefore impossible to know whether they themselves could even make the necessary showing of support.  This just further exacerbates the disservice to the public interest.

## III.   CONCLUSION

WHEREFORE, the Secretary respectfully requests this Court deny Plaintiffs' Motion for Preliminary Injunction (DE 9).

Respectfully submitted,

*/s/ Ashley E. Davis*
BRADLEY R. MCVAY (FBN 79034)
*General Counsel*
brad.mcvay@dos.myflorida.com
ASHLEY E. DAVIS (FBN 48032)
*Deputy General Counsel*
ashley.davis@dos.myflorida.com
candice.edwards@dos.myflorida.com
COLLEEN O'BRIEN (FBN 76578)
*Assistant General Counsel*
colleen.obrien@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127
*Counsel for Secretary of State*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), the undersigned certifies that this filing contains 7364 words according to the word-processing system used to prepare it, excluding portions that do not count toward the limit.  This filing also conforms to the format requirements of Local Rule 5.1(C).

*/s/ Ashley E. Davis*
ATTORNEY


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on this 22d day of May 2020.

*/s/ Ashley E. Davis*
ATTORNEY