IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

INDEPENDENT PARTY
OF FLORIDA,
and
PARTY FOR SOCIALISM
AND LIBERATION,

    *Plaintiffs*,

v.          Case No.  4:20cv110-MW/MAF

LAUREL M. LEE, Florida
Secretary of State, in her
official capacity,

    *Defendant*.

_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION[1]

This Court has considered, after a telephonic hearing on June 5, 2020,

Plaintiffs' Motion for Preliminary Injunction, ECF No. 9, the Secretary's Request

for Judicial Notice[2] and Response, ECF Nos. 33 & 34, Plaintiff's Reply, ECF No.

---

[1] This Court will not sit on its order waiting for Plaintiffs' claims to be rendered moot. Instead, this Court issues an abbreviated order to afford Plaintiffs a meaningful opportunity to appeal.

[2] The Secretary requests this Court take judicial notice of certain election-related filings available from the Florida Department of State's website. ECF No. 33. During the telephonic hearing, Plaintiffs stated they had no objection to the Secretary's request. The Secretary's Request for Judicial Notice, ECF No. 33, is **GRANTED** because these documents are  "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

35, and all related exhibits. Plaintiffs, minor political parties under Florida law, seek a preliminary injunction barring the application of section 103.021(4), Florida Statutes (the "Ballot Access Statute") to keep their candidates for President and Vice President off Florida's November 2020 general election ballot. For the following reasons, Plaintiffs' motion, ECF No. 9, is **DENIED**.

## I

"A preliminary injunction is appropriate if the movant demonstrates all of these elements: (1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014) (citation omitted). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation omitted). "Failure to show any of the four factors is fatal, and the most common failure is not showing a substantial likelihood of success on the merits." *Id.*

# II

The Ballot Access Statute provides two alternative routes for minor political parties to have their presidential (and vice presidential) candidates printed on the ballot. They may either (a) affiliate with a "national party"[3] (the "affiliation method") or (b) file a petition signed by 1% of the state's registered electors (the "1% rule" or the "petition method"). § 103.021(4)(a)–(b), Fla. Stat. (2019). A minor party proceeding under the 1% rule must file a separate petition from each county for which signatures are solicited with the respective supervisors of elections by July 15 of each presidential election year. *Id.* § 103.021(4)(b).

In Count One of their Complaint, Plaintiffs allege the Ballot Access Statute violates their First and Fourteenth Amendment rights to association, free speech, political activity, and their respective members' rights to vote for the candidates of their choice because neither the affiliation method nor the petition method is narrowly tailored to further a legitimate state interest. In Count Two, Plaintiffs allege the Ballot Access Statute violates the Equal Protection Clause because it discriminates amongst minor parties by treating minor parties that are not affiliated with a national party differently than minor parties that are affiliated with a national

---

[3] "National party" is defined by statute as "a political party that is registered with and recognized as a qualified national committee of a political party by the Federal Election Commission." § 103.021(4)(a), Fla. Stat. (2019).

party, and affiliation with a national party is not rationally related to any legitimate state interest in regulating access to the Presidential ballot.

### III

As a preliminary matter, this Court must first address the Secretary's argument that Plaintiffs lack standing to challenge either alternative method of ballot access. *See Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1201 (11th Cir. 2020). The Secretary argues Plaintiffs lack standing to challenge the 1% rule because Plaintiffs have made no effort to collect signature petitions and their injury was therefore caused by their own inaction, and not by the Ballot Access Statute. ECF No. 34 at 4. The Secretary argues Plaintiffs lack standing to challenge the affiliation method based on their internal governing documents. *Id.* at 4–5. According to the Secretary, Plaintiff Independent Party lacks standing to challenge the affiliation method because (a) its governing documents require use of the 1% rule for access to the presidential ballot and (b) its governing documents require a *candidate* to initiate the petition method. *Id.* The Secretary argues Plaintiff Party for Socialism and Liberation lacks standing to challenge the affiliation method because its governing documents state that it *is* affiliated with a national party (the "Party for Socialism and Liberation"). *Id.* For the following reasons, this Court finds that Plaintiffs have standing.

4

Whether Plaintiffs' failure to make any effort to collect signature petitions deprives Plaintiffs of standing to challenge the 1% rule is not an easy question. While the Eleventh Circuit has not addressed this exact issue,[4] it has held that "token attempts" to meet a signature petition requirement are sufficient to confer standing. *See Bergland v. Harris*, 767 F.2d 1551, 1555–56 (11th Cir. 1985). Outside of the Eleventh Circuit, "[c]ourts have consistently held that an intention to gain access to a ballot in a specific upcoming election confers standing to challenge ballot-access restrictions, regardless of whether the challenger attempted to satisfy the restrictions." *Bernbeck v. Gale*, 829 F.3d 643, 651 (8th Cir. 2016) (Kelly, J., dissenting) (collecting cases); *see Delaney v. Bartlett*, No. 1:02CV00741, 2003 WL 23192145, at *3 (M.D.N.C. Dec. 24, 2003) ("[C]ourts have allowed plaintiffs who make little or no effort to comply with election statutes to bring constitutional challenges.") (collecting cases); *see also Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 362 (3d Cir. 2014) ("Thus, when an individual who is the very object of a law's requirement or prohibition seeks to challenge it, he always has standing.") (quoting Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers,* 17 Suffolk U.L.Rev. 881, 894 (1983)); *contra Bernbeck*, 829

---

[4] In *Stein v. Ala. Sec'y of State*, 774 F.3d 689 (11th Cir. 2014), the Eleventh Circuit noted that the minor-party plaintiffs did not make "reasonably diligent efforts (or any efforts at all) to meet Alabama's signature requirement" but did not address the issue of plaintiffs' standing. *See* 774 F.3d at 697. Because *Stein* did not address whether it had jurisdiction to hear the dispute, *Stein* is not binding as to the issue of standing. *See Jacobson*, 957 F.3d at 1222 (Pryor, J., concurring).

F.3d at 649 (finding plaintiff lacked standing where "[i]t [was] undisputed that Bernbeck never submitted a signed petition"). In the absence of binding authority from the Eleventh Circuit, this Court finds persuasive the majority view that a plaintiff's intention to gain access to a ballot in a specific upcoming election confers standing and that a plaintiff need not make any effort to satisfy the challenged ballot access restrictions.

This Court also finds unavailing the Secretary's argument that Plaintiffs lack standing based on certain provisions in Plaintiffs' internal governing documents. Plaintiff Independent Party of Florida's Chairman submitted an affidavit explaining that its bylaws cite only the 1% rule because the Florida Department of State required the party to delete a citation to the affiliation method. ECF No. 35-2. The Secretary has not challenged this declaration. Further, this Court does not interpret Plaintiff Independent Party of Florida's bylaw's reference to a "candidate" to mean that the party would not expend time and resources complying with the 1% rule. Plaintiff Party for Socialism and Liberation explains that the term "national party" as used in its bylaws "is using the common definition of national party, not the statutory definition" and asserts that it is in fact not associated with a "national party" as that term is defined in the Ballot Access Statute. ECF No. 35 at 4. The Secretary has not challenged Plaintiff Party for Socialism and Liberation's assertion.

For these reasons, this Court finds that Plaintiffs have standing to challenge the entirety of the Ballot Access Statute.

**IV**

*1. First and Fourteenth Amendment Rights to Association, Free Speech, and Political Activity Claim*

Turning to the merits of Plaintiffs' motion, this Court finds that Plaintiffs have failed to show a substantial likelihood of success on the merits of their claims. The balancing test set out in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) "controls challenges to ballot access requirements." *Green v. Mortham*, 155 F.3d 1332, 1337 (11th Cir. 1998). This includes "equal protection challenges to state ballot-access laws." *Fulani v. Krivanek*, 973 F.2d 1539, 1543 (11th Cir. 1992). Under this test,

> [C]ourts first must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Green*, 155 F.3d at 1336 (quoting *Anderson*, 460 U.S. at 789).

Ultimately, the "rigorousness" of this Court's inquiry "depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). "[W]hen those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.' " *Id.* (quoting *Norman v. Reed*, 502 U.S.

279, 289 (1992)). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788). A ballot-access law imposes a severe burden if it " 'freeze[s]' the status quo by effectively barring all candidates other than those of the major parties" and does not "provide a realistic means of ballot access." *Libertarian Party of Fla. v. Fla.*, 710 F.2d 790, 793 (11th Cir. 1983) (quoting *Jenness v. Fortson*, 403 U.S. 431 (1971)), *cert. denied* 469 U.S. 831 (1984). If, however, a "reasonably diligent [] candidate [can] be expected to satisfy the signature requirements," then the burden is not severe, and the State's interests will generally be a sufficient justification. *Id.* (quoting *Storer v. Brown*, 415 U.S. 724 (1974)).

For the following reasons, this Court concludes Plaintiffs have failed to show a substantial likelihood of success on the merits because they have not shown that the Ballot Access Statute imposes a severe restriction on their First and Fourteenth Amendment rights.

<u>Eleventh Circuit Precedent</u>

First, while the Eleventh Circuit has rejected the use of a "litmus-paper test" to separate valid from invalid restrictions, a plaintiff challenging "the very same requirement [that has] been previously upheld as constitutional" must "demonstrate

8

why a different result from [the prior case] is required in [the instant] case." *See Cowen v. Ga. Sec'y of State*, No. 19-14065, 2020 WL 2896354, at *3 n.1, *6 (11th Cir. June 3, 2020). At this preliminary stage, Plaintiffs have failed to demonstrate why a different result from two prior decisions upholding Florida's ballot-access restrictions is required in this case. Specifically, in *Libertarian Party*, the Eleventh Circuit upheld Florida's previous and more onerous 3% signature petition threshold for minor party statewide candidates. 710 F.2d at 793. The challenged Florida statute required a party to collect 144,492 signature petitions in 188 days and county election supervisors charged a non-waivable 10 cents per signature to cover the costs of verifying the petitions. *Id.* at 794–95. Despite these restrictions, the Eleventh Circuit concluded that the challenged Florida statute did not "unreasonably encroach[] on ballot access." *Id.* at 793; *see also Beller v. Kirk*, 328 F. Supp. 485 (N.D. Fla. 1970) (finding, on motion to dismiss, Florida's 3% signature petition requirement valid), *aff'd sub. nom. Beller v. Askew*, 403 U.S. 925 (1971). And in *U.S. Taxpayers Party of Fla. v. Smith*, the Eleventh Circuit summarily affirmed the district court's finding that Florida's 1% signature petition requirement and July 15 filing deadline "do not severely burden either the voters' or the candidates' First or Fourteenth Amendment rights." 871 F. Supp. 426, 432 (N.D. Fla. 1993), *aff'd*, 51 F.3d 241 (11th Cir. 1995).

Notably, the Ballot Access Statute appears to be *less* restrictive than the Florida statute upheld by the Eleventh Circuit in *Libertarian Party*. First, the 1% rule requires Plaintiffs to collect 132,781 valid signature petitions. In contrast, the plaintiffs in *Libertarian Party* were required to collect 144,492 valid signature petitions. Second, Florida law currently allows Plaintiffs to waive the signature verification fee, *see* § 99.097(4), Fla. Stat., whereas Florida law did not permit the plaintiffs in *Libertarian Party* to waive the signature verification fee. Finally, while the plaintiffs in *Libertarian Party* had only 188 days to collect the required 144,492 signature petitions, Plaintiffs here have nearly four years to collect 132,781 signature petitions.

Moreover, many of the same "alleviating factors that eased the burden of gathering signatures in *Libertarian Party*" are present here. *See Swanson v. Worley*, 490 F.3d 894, 904 & n.11 (11th Cir. 2007). Namely, voters may sign the petition regardless of party affiliation or participation in another party's primary, voters may sign more than one petition, there are no geographic caps on the number of signatures that can be gathered from one area, and there is no limit on how many signatures may be submitted for verification. *See* § 103.021(4)(b), Fla. Stat.; *Libertarian Party of Fla.*, 710 F.2d at 794. "These alleviating factors resonate just as strongly in this

case as they did in *Libertarian Party*, if not more so, and ameliorate any burden on [P]laintiffs' constitutional rights." *See Swanson*, 490 F.3d at 904.[5]

Additionally, while not binding authority, this Court notes that the Ninth Circuit recently upheld California's 1% signature requirement for independent candidates in *De La Fuente v. Padilla*, 930 F.3d 1101 (9th Cir. 2019), *cert. denied* 140 S. Ct. 676 (2019). Florida's signature requirement—132,781—is the second-highest in the country behind California. *Id.* at 1104. In 2016, an independent candidate for state-wide office had to collect 178,039 signatures (about 60,000 *more* than in Florida) to appear on the California ballot. *Id.* The Ninth Circuit affirmed the district court's grant of summary judgment for California, concluding that "California's overall scheme does not significantly impair ballot access." *Id.* at 1105.

In short, Eleventh Circuit precedent and the persuasive reasoning of the Ninth Circuit strongly weigh against a finding that the Ballot Access Statute imposes a severe burden on Plaintiffs' First and Fourteenth Amendment rights and militates against a conclusion that Plaintiffs have a substantial likelihood of success on the merits.

---

[5] Plaintiffs assert it would cost over $100,000 to gather the required number of signatures. ECF No. 1 at ¶¶ 26, 28–31. Based on Eleventh Circuit precedent, this cost does not weigh heavily in favor of finding a severe burden. *See Stein*, 774 F.3d at 697 (assuming, based on estimates that collecting signatures would cost at least $100,000, that the minor political parties could not afford to collect sufficient number of signatures and finding "that evidence, standing alone, does not raise a genuine issue of material fact that the burden is *severe*").

<u>History of Non-Major Party Candidates on Florida's Ballot</u>

Two presidential elections have occurred since the Ballot Access Statute took its present form in 2011. In 2012, since the current alternative ballot access methods have been in place, ten (10) minor parties accessed Florida's ballot using the affiliation method in 2012 and four (4) minor parties accessed Florida's ballot using the affiliation method in 2016. *See* ECF No. 33-8 at 4, 6. Minor parties have accessed the ballot by affiliation in every presidential election since 2000. *See* ECF No. 33-8 2–6. It appears that no party has attempted to access the ballot by the petition method during this period. However, in 1996, two minor party candidates accessed the ballot via the petition method (although at that time this required the collection of 65,596 signatures, about half the current required number). *See* ECF No. 35-1 at ¶ 6.

In *New Alliance Party of Ala. v. Hand*, 933 F.2d 1568 (11th Cir. 1991), the plaintiffs challenged Alabama's April filing deadline for signature petitions. The Eleventh Circuit found the ability of other independent and minor party candidates to obtain access to Alabama's ballot "indicate[d] that, although Alabama's early deadline does not serve to 'freeze the status quo,'" it does make it moderately difficult for a minor party candidate to qualify to be on the ballot." *Id.* at 1575–76.

In contrast, in *Green Part of Ga. y v. Kemp*, 171 F. Supp. 3d 1340 (N.D. Ga. 2016), the court found that Georgia's 1% signature petition requirement imposed a severe burden because no independent or minor party candidate had accessed

Georgia's ballot *in fifteen years*. *Id.* at 1363. And in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006), the Sixth Circuit found Ohio's ballot access requirement imposed a severe burden because history showed elections in Ohio had been monopolized by the two major parties. Ohio averaged one minor party on the ballot per year between 1992 and 2002, and no minor political parties qualified for the ballot in any race in 1992, 1994, 2002, and 2004.

In short, the recent history of non-major party candidates on Florida's ballot suggests that the Ballot Access Statute does not freeze the status quo which weighs against Plaintiffs' contention that Florida's ballot-access scheme imposes a severe burden.

<u>Practical Barriers</u>

Again, the burden imposed by the Ballot Access Statute must be determined in the context of Florida's entire ballot-access scheme. In some cases, the presence of certain "suffocating restrictions" on signature gathering can, in the aggregate, impose a severe burden on minor political parties. *See Cartwright v. Barnes*, 304 F.3d 1138, 1140 (11th Cir. 2002) (concluding that Georgia "has not imposed any 'suffocating restrictions' upon the free circulation of nominating petitions") (quoting *Jenness*, 403 U.S. at 438)). In other cases, "alleviating factors" ease the burden of gathering signatures. *See Swanson*, 490 F.3d at 904 (listing "alleviating factors that eased the burden of gathering signatures" under Alabama's ballot-access statute).

13

The Eleventh Circuit has recognized each of the following "alleviating factors" as reducing the burden on minor political parties' signature collecting efforts: (1) allowing voters to sign petitions regardless of party affiliation; (2) allowing voters who already voted in the primary to sign the petition; (3) allowing voters to sign more than one petition; (4) lack of restriction on how many signatures were allowed from one geographic area; (5) lack of restriction on how many signatures could be submitted in an effort to meet the percentage requirement; (6) allowing sufficient time to conduct the petitioning effort; (7) requiring no impermissibly burdensome expenses. *See Swanson*, 490 F.3d at 900 n.7, 904 n.11 (citing *Libertarian Party of Fla.*, 710 F.2d at 794).

"Suffocating restrictions" include the inverse of many of the alleviating factors (i.e., a limited time to collect signatures, geographic restrictions) as well as early petition filing deadlines and notarization requirements. *See, e.g.*, *Green Party of Ga.*, 171 F. Supp. 3d at 1347, 1363 n.14 (finding "the operation of the Georgia election code as a whole contributes [to Georgia's one percent signature requirement] being so severely burdensome" and listing the following restrictions imposed by Georgia law: (1) each sheet of nomination petition must bear the circulator's affidavit, which must be subscribed and sworn by a notary public, (2) signatures must be collected within 180-day window, (3) different sheets must be used by signers residing in different counties or municipalities); *New Alliance Party*

14

*of Ala.*, 933 F.2d at 1575–76 (finding Alabama's April 6 filing deadline "pose[s] a significant burden on plaintiffs in their attempts to access the Alabama ballot"); *Libertarian Party of Ark. v. Thurston*, 394 F. Supp. 3d 882, 911–912 (E.D. Ark. 2019) (finding 3% signature requirement within a 90-day petitioning window and a filing deadline more than one year prior to the general election "very likely severely burdens plaintiffs' fundamental rights").

Here, virtually every "alleviating factor" identified by the Eleventh Circuit is present. For example, Plaintiffs have ample time to collect signatures. For the 2020 general election, Plaintiffs could have started collecting signatures beginning on July 16, 2016—*nearly four years* before the July 15, 2020 filing deadline. Voters may sign petitions regardless of their party affiliation or their participation in another party's primary. Voters can sign more than one petition. There are no geographic restrictions on where signatures may be collected. There is no limit on the number of signatures may be submitted in an effort to meet the 1% requirement. Further, minor parties may waive the supervisors of election's signature verification fees.

Critically, Florida's current Ballot Access Statute is even *less* restrictive than the Florida statute upheld by the 11th Circuit in *Libertarian Party of Florida*. In addition to Florida then requiring a 3% signature requirement, a minor political party only had 188 days to conduct its petition effort and minor political parties could not

waive the 10-cents-per-signature charged by county election supervisors to cover the costs of verifying petitions.

In short, a review of the Ballot Access Statute for alleviating factors and suffocating restrictions also weighs against Plaintiffs' contention that Florida's ballot-access scheme imposes a severe burden.

<u>State Interests</u>

In the context of state regulations of prospective third-party or independent candidates' access to the ballot, the Supreme Court has recognized the states' legitimate interest in requiring such candidates to demonstrate "some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness*, 403 U.S. at 442; *see Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986) ("[I]t is now clear that States may condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office.").

Importantly, however, "a state's interest in regulating a presidential election is less important than its interest in regulating other elections because the outcome of a presidential election 'will largely be determined by voters beyond the State's boundaries' and 'the pervasive national interest in the selection of candidates for

national office . . . is greater than any interest of an individual State.' Consequently, a ballot access restriction for presidential elections 'requires a different balance' than a restriction for state elections." *Green Party of Ga. v. Georgia*, 551 F. App'x 982, 984 (11th Cir. 2014) (citations omitted).

"Neither the Supreme Court nor [the Eleventh Circuit] has articulated a clear standard of review for challenges to ballot-access restrictions in a presidential election." *Stein*, 774 F.3d at 691.

The Secretary asserts the State's interest is in requiring candidates to make a preliminary showing of substantial support in order to qualify for a place on Florida's ballot. She points to evidence that prior to 2012, when less-restrictive requirements governed minor parties' access to the ballot, one individual formed 40 different parties in a year and a half. Under the current Ballot Access Statute, there have been as many as ten (10) minor parties on the ballot with NPA candidates and major party candidates. And from 2000 to 2012, there have been three (3) minor parties on the ballot with "Socialist" or "Socialism" in the name. The Secretary argues that without the Ballot Access Statute, there would be even more parties on the ballot.

The Secretary argues that because a "minor party" by definition does not have registered as members 5% of the total registered voters of the state, the Ballot Access Statute serves the State's interest in ensuring a minor party has a significant

modicum of support before its candidates may appear on the ballot. The Secretary argues that the petition method to demonstrate support in *Florida* and the affiliation method provides an alternative means to demonstrate a significant modicum of support *nationally* in order to account for whatever "national interest" there may be in presidential elections.

Plaintiffs argue the affiliation method is not rationally related to the State's interest because "there is no indication that FEC recognition has any logical correlation to voter support in Florida." Plaintiffs emphasize that only six parties (besides the Democrats and Republicans) have been recognized as "national committees" by the FEC and there are therefore only six minor parties that could possibly qualify for ballot access in Florida by virtue of their FEC national committee recognition. Plaintiffs also contend that there are good reasons for a minor party not to seek national committee recognition, and a minor party may still have significant national support without being recognized as a "national committee." Further, Plaintiff Independent Party states that it prefers to retain control of who it nominates as a candidate for president and is not interested in submitting that control to a national convention.

The State's articulated interest, a modicum of state or national support, is a longstanding legitimate interest and the Secretary's contention that the articulated

interest is advanced by both the petition method and the affiliation method is supported by the record.

When balancing the State's interest against the limited burden on Plaintiffs based on the alleviating factors, and other factors discussed above, this Court finds that Plaintiffs have not demonstrated a substantial likelihood of success on the merits of establishing the Ballot Access Statute violates their First and Fourteenth Amendment rights to association, free speech, political activity, and their respective members' rights to vote for the candidates of their choice.

### 2. Equal Protection Claim

Ballot-access requirements that place more burdensome restrictions on certain types of candidates than on others implicate rights under the Equal Protection Clause. *See Williams v. Rhodes*, 393 U.S. 23, 34 (1968). Plaintiffs claim the Ballot Access Statute discriminates between nationally-affiliated minor parties and minor parties that are not affiliated with a national party. For the same reasons outlined above, the burden placed on Plaintiffs' rights by the Ballot Access Statute is not severe and the Ballot Access Statute rationally serves important state interests.

### V

Plaintiffs argue they will suffer irreparable injury if their candidates are not on the 2020 general election ballot. Plaintiffs argue no harm is caused to the State by adding two names to the presidential ballot. Plaintiffs further argue that the public

interest will be served by having two additional options at the ballot box and by "hav[ing] the opportunity to hear from the nominated candidates during the campaign talk about the issues that are important to them."

The Secretary argues any harm suffered by Plaintiffs is caused by their choice not to affiliate with a national party or to make an effort to gather signatures. The Secretary argues that the State's interests will be harmed by increased voter confusion and exacerbating "party raiding." The Secretary argues the public's interest in ensuring that candidates on the ballot have first shown a significant modicum of support will be disserved by an injunction requiring Plaintiffs' candidates to be placed on the ballot.

While Plaintiffs arguably have the better of these issues, Plaintiffs' failure to show a substantial likelihood of success on the merits is fatal. *See ACLU of Fla., Inc.*, 557 F.3d at 1198. Consequently, this Court will not analyze the remaining three factors.

## VI

In sum, Plaintiffs have failed to show a substantial likelihood of success on the merits because they have not shown that the Ballot Access Statute imposes a severe restriction on their First and Fourteenth Amendment rights. Plaintiffs'

Motion for Preliminary Injunction, ECF No. 9, is therefore **DENIED**.

      **SO ORDERED on June 8, 2020.**

                                      **s/Mark E. Walker**
                                      **Chief United States District Judge**