[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12107

_____

D.C. Docket No. 4:20-cv-00110-MW-MAF

INDEPENDENT PARTY OF FLORIDA,
PARTY FOR SOCIALISM AND LIBERATION,

                                      Plaintiffs-Appellants,

versus

SECRETARY, STATE OF FLORIDA, In Her Official Capacity,

                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 3, 2020)

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and LUCK, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a Florida ballot-access law for presidential elections complies with the United States Constitution. Decades ago, we upheld a Florida law that required minor parties to submit a petition signed by three percent of registered voters to access the ballot in statewide elections. *Libertarian Party of Fla. v. Florida*, 710 F.2d 790, 792 (11th Cir. 1983). But Florida now makes it easier for minor parties to gain access to the ballot. Under current law, minor parties may access the presidential ballot *either* by satisfying a *one*-percent signature requirement *or* by affiliating with a qualified national party. Fla. Stat. § 103.021(4)(a)–(b). The Independent Party of Florida and the Party for Socialism and Liberation seek to place their presidential candidates on the ballot in Florida without satisfying either requirement. The district court denied their motion for a preliminary injunction against the enforcement of these requirements. We affirm because we conclude that the minor parties are unlikely to succeed on their claims that the ballot-access requirements unconstitutionally burden their First Amendment rights and deny them equal protection of the laws.

## I. BACKGROUND

Florida offers minor political parties two ways to access the ballot in presidential elections. If a minor party affiliates with a national party that nominates candidates for President and Vice President at a national convention, the minor party may have those candidates listed on the ballot by sending the

Department of State a certificate naming the candidates. Fla. Stat. § 103.021(4)(a). To qualify as a "national party," a party must successfully register as a national committee with the Federal Election Commission. *Id.* If a minor party does not affiliate with a qualified national party, its candidates for President and Vice President may appear on the ballot if the party submits a petition signed by one percent of registered voters in Florida. *Id.* § 103.021(4)(b).

This ballot-access regime has governed presidential elections in Florida since 2012. Ten minor parties accessed the ballot using the affiliation method in the 2012 election and four did so in 2016. Minor parties also accessed the ballot using a similar affiliation method between 2000 and 2008. It appears that no party has attempted to access the presidential ballot by the petition method since Florida first adopted an affiliation method in 1999. The last time minor-party presidential candidates accessed the ballot using the petition method was in 1996.

The Independent Party of Florida and the Party for Socialism and Liberation seek to place their presidential candidates on the ballot in the upcoming election. The Party for Socialism and Liberation has already chosen its candidate for President; the Independent Party of Florida is still in the selection process. Neither party affiliates with a qualified national party. And neither party has complied with the one-percent signature requirement, which they contend burdens their constitutional rights.

The minor parties filed a complaint against the Florida Secretary of State and moved for a preliminary injunction. They alleged that the one-percent signature requirement is an unconstitutional restriction on their First and Fourteenth Amendment rights. *See generally Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). They also alleged that Florida violated the Equal Protection Clause by providing an alternative, easier method of ballot access for minor parties that affiliate with a national party.

The district court denied the motion for a preliminary injunction. It ruled that the parties had standing to challenge the ballot-access measures but that they were unlikely to succeed on the merits of their claims. The district court evaluated the claims using the balancing test employed in *Anderson*, 460 U.S. 780, and *Burdick*, 504 U.S. 428, which requires courts to weigh the burdens imposed by an election regulation against the state interests that justify the measure. It concluded that the ballot-access law does not impose a severe restriction on First and Fourteenth Amendment rights and that the State's interest in requiring minor parties to prove a modicum of state or national support before appearing on the ballot was sufficient to justify the law.

## II. STANDARDS OF REVIEW

We review the denial of a preliminary injunction for abuse of discretion. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1326 (11th Cir. 2001). We review

any underlying legal conclusions *de novo* and any factual findings for clear error. *Id.*

### III. DISCUSSION

We divide our discussion in two parts. We first explain that at least one of the minor parties has standing to challenge both ballot-access requirements. We then explain that the district court correctly denied the motion for a preliminary injunction because the parties are unlikely to succeed on the merits of their claims.

    *A.  The Party for Socialism and Liberation Has Standing.*

We must begin by ensuring that at least one plaintiff has standing under Article III of the Constitution to challenge the ballot-access requirements. *See Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1201 (11th Cir. 2020). To have standing, a plaintiff must establish an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision. *Id.* When a plaintiff seeks prospective relief to prevent a future injury, it must establish that the threatened injury is "certainly impending." *Id.* (internal quotation marks omitted).

The Party for Socialism and Liberation has standing. It has chosen its candidate for President and seeks to place that candidate on the ballot in the upcoming presidential election. The Secretary of State previously rejected the party's application for ballot access in the 2016 presidential election because it

5

failed to comply with the statutory requirements, and the party has every reason to believe the Secretary will continue to enforce those requirements in the upcoming 2020 election. The party will be injured if its candidate is denied access to the ballot. *See Swanson v. Worley*, 490 F.3d 894, 903 n.10 (11th Cir. 2007). That future injury is "certainly impending"—it will occur only months from now. And because the party has neither affiliated with a qualified national party nor complied with the one-percent signature requirement, its injury is fairly traceable to the challenged ballot-access provisions, both of which the Secretary enforces. Fla. Stat. §§ 20.10(1), 103.021(4)(a)–(b); *see also Jacobson*, 957 F.3d at 1211. Finally, its injury could be redressed by an injunction forbidding the Secretary to deny the party access to the ballot based on the challenged provisions. *See Jacobson*, 957 F.3d at 1208–09.

The Secretary contends that the reasoning of *Bernbeck v. Gale*, 829 F.3d 643 (8th Cir. 2016), supports that the minor parties lack standing, but we disagree. In *Bernbeck* a petition circulator alleged that he was injured by a signature-*distribution* requirement for voter initiatives because the requirement allegedly gave the signatures of voters in rural counties greater weight than other signatures. *Id.* at 647, 648 n.4. The Eighth Circuit held that the petition circulator lacked standing because he never attempted to collect or submit a single signature for the initiative at issue and had no immediate plans to do so in the future. *Id.* at 648 &

n.3. Without any efforts or imminent plans to collect signatures, the petition circulator could not establish that any signatures were at imminent risk of being unequally valued under the signature-distribution requirement. *Id.* at 648 & n.4. Because the alleged injury in *Bernbeck* was not denial of access to the ballot but instead a failure to value all signatures equally, the decision is inapposite.

### B.  The District Court Correctly Denied a Preliminary Injunction.

To obtain a preliminary injunction, a party must establish that it is substantially likely to succeed on the merits; that it will suffer irreparable injury absent an injunction; that the threatened injury to the movant outweighs any harm the injunction would cause the opposing party; and that the injunction would not be adverse to the public interest. *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020). We can begin and end with the first requirement. Because the minor parties failed to establish a substantial likelihood of success on their claims, the district court correctly denied their motion for a preliminary injunction.

In our Circuit, the balancing test of *Anderson*, 460 U.S. 780, and *Burdick*, 504 U.S. 428, "controls challenges to ballot access requirements." *Green v. Mortham*, 155 F.3d 1332, 1337 (11th Cir. 1998). This test applies whether a plaintiff challenges a ballot-access requirement under the First Amendment or the Equal Protection Clause of the Fourteenth Amendment. *Fulani v. Krivanek*, 973 F.2d 1539, 1542–43 (11th Cir. 1992).

Under this framework, the level of scrutiny we apply to a ballot-access law depends on the severity of the burdens it imposes. Severe restrictions on ballot access must be narrowly tailored to advance a compelling state interest. *Grizzle v. Kemp*, 634 F.3d 1314, 1322 (11th Cir. 2011). But reasonable, nondiscriminatory restrictions are usually justified by "a State's important regulatory interests" in conducting orderly elections. *Id.* (internal quotation marks omitted); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("Lesser burdens . . . trigger less exacting review . . . ."). However severe the burden, we must ensure it is warranted "by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) (internal quotation marks omitted).

We applied this framework to uphold an earlier version of Florida's ballot-access regime in 1983. *Libertarian Party*, 710 F.2d at 792–93. At that time, Florida offered minor political parties only one path to the ballot: submitting a petition signed by three percent of registered voters, which at the time amounted to 144,492 signatures. *Id.* at 792. We held that this requirement did not "unreasonably encroach[] on ballot access" because Florida law alleviated the burden of gathering signatures in several ways. *Id.* at 793–94. Voters could sign a petition regardless of party affiliation, voting history, or whether they had previously signed a petition for another minor party. *Id.* at 794. Florida law imposed no geographic-distribution

8

requirements for collecting signatures, and parties could submit more signatures than necessary to ensure that a petition contained enough valid signatures. *Id.* Parties had 188 days to collect the required signatures, which "compare[d] favorably" to other time limits courts had upheld. *Id.* And although Florida charged 10 cents per signature to verify petitions and did not allow the charge to be waived, the law still was not "impermissibly burdensome as to cost." *Id.* These burdens on ballot access, we concluded, were justified by the State's important interest in ensuring that political parties have a significant modicum of support before appearing on the ballot. *Id.* at 793.

Florida's current ballot-access regime is less restrictive than the one we upheld in *Libertarian Party*, and it serves the same state interest. Minor parties now have *two* ways to access the ballot: affiliating with a qualified national party or satisfying a one-percent signature requirement. Fla. Stat. § 103.021(4)(a)–(b). The current signature requirement is less onerous than the earlier one in both relative and absolute terms: one percent of registered voters amounts to only 132,781 signatures instead of 144,492. Minor parties now have nearly four years to collect the signatures instead of only 188 days. And Florida law now allows election officials to waive the signature-verification fee upon a showing of need. Fla. Stat. §§ 99.097(4), 103.021(4)(b). All the "alleviating factors that eased the burden of gathering signatures in *Libertarian Party*"—and more—are present here.

9

*Swanson*, 490 F.3d at 904. And Florida continues to invoke its well-established interest in requiring candidates to "make a preliminary showing of substantial support" before appearing on the ballot, an interest the signature requirement plainly advances. *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) (internal quotation marks omitted); *see also Libertarian Party*, 710 F.2d at 793.

Despite previously upholding a more restrictive ballot-access regime in Florida, we still must consider whether any changed circumstances require a different result under the *Anderson-Burdick* test. *See Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1342 n.1 (11th Cir. 2020). After we decided *Libertarian Party*, Florida added a second method for minor parties to access the ballot. In addition to the petition method, minor parties may also access the ballot by affiliating with a qualified national party—a party that nominates candidates for President and Vice President at a national convention and successfully registers as a national committee with the Federal Election Commission. Fla. Stat. § 103.021(4)(a). The minor parties contend that the affiliation method renders the ballot-access regime unconstitutional because it undermines the State's asserted interest for the one-percent signature requirement and treats minor parties differently based on whether they choose to associate with a qualified national party. We are unpersuaded.

The affiliation method does not undermine the state interest that justifies the one-percent signature requirement. Together, the affiliation and petition methods

serve the important state interest of limiting ballot access to presidential candidates that have a modicum of support *somewhere*—either nationally or in Florida. The minor parties contend that a State may not consider national support in setting ballot-access requirements for presidential elections, but presidential elections implicate a unique "national interest" because they are decided by voters from across the nation. *Anderson*, 460 U.S. at 794–95. For this reason, States have "a less important interest" in limiting ballot access in presidential elections than in state and local contests. *Id.* at 795; *accord Cowen*, 960 F.3d at 1344. By providing an *additional* method of ballot access for minor parties whose presidential candidates have national support, Florida respects the "national interest" in presidential elections. *Anderson*, 460 U.S. at 795. It has not undermined its interest in requiring parties that have no demonstrated national support to prove some modicum of support in Florida. That States have a lesser interest regulating ballot access in presidential elections does not mean they have *no* interest.

    The minor parties dispute the premise that the affiliation method reliably measures national support, but their own evidence belies this argument. The minor parties submitted evidence that the Federal Election Commission will not grant national committee status to a party unless it has placed candidates for President and Congress on the ballot in several States and is organized across the United States, both of which reflect national support.

11

To be sure, the minor parties also offered evidence that candidates of qualified national parties do not always receive more votes in presidential elections than other minor-party candidates. But a State's proxy for measuring a modicum of support need not be perfect, especially where the State seeks to balance "the desire for liberal ballot access with the need to ensure that candidates achieve some modicum of support." *See Rockefeller v. Powers*, 74 F.3d 1367, 1382 (2d Cir. 1995). The district court did not err in concluding that the affiliation method reasonably advances the State's interest in granting ballot access to presidential candidates with a modicum of national support.

The minor parties also challenge the ballot-access law under the Equal Protection Clause because it treats minor parties differently based on whether they affiliate with a qualified national party. Only minor parties that affiliate with a national party can avoid the one-percent signature requirement. Fla. Stat. § 103.021(4)(a)–(b). And the decision whether to affiliate may be based on the exercise of associational freedoms. For example, the Independent Party of Florida, true to its name, desires to remain independent and not associate with any national party. The minor parties contend that subjecting them to a signature requirement that does not apply to minor parties that affiliate with a national party denies them equal protection of the laws.

We apply the *Anderson-Burdick* test to resolve equal-protection challenges to a ballot-access requirement. *Fulani*, 973 F.2d at 1542–43. We first consider "the character and magnitude" of the asserted denial of equal treatment. *Id.* at 1544 (quoting *Anderson*, 460 U.S. at 789). We then identify "the precise interests put forward by the State" to justify its rule and determine "the legitimacy and strength" of each interest. *Id.* at 1546 (quoting *Anderson*, 460 U.S. at 789). We conclude that Florida's goal of accounting for the national interest in presidential elections justifies its decision to provide different paths to the ballot for minor parties that affiliate with a qualified national party and those that do not.

The minor parties' asserted injury is that they "were forced to bear an unequal burden in order to gain access to the ballot" based on the exercise of their associational freedom. *See id.* at 1544. We agree that treating political parties differently may impermissibly burden constitutional rights when no legitimate reason exists for the distinction. In *Fulani*, for example, we held unconstitutional a law that excluded minor parties from a fee-waiver provision because the State failed to explain how its discriminatory treatment of minor parties advanced any relevant state interest in regulating ballot access. *Id.* But the Supreme Court has made clear that States may account for relevant differences among political parties and candidates when regulating ballot access. *See, e.g.*, *Jenness v. Fortson*, 403 U.S. 431, 441–42 (1971) (explaining that Georgia was not "guilty of invidious

13

discrimination" by acknowledging "obvious differences" between established and new political parties and "providing different routes to the . . . ballot" based on those differences); *accord Libertarian Party*, 710 F.2d at 795.

Florida's interest in accounting for the national interest in presidential elections justifies its decision to provide minor parties that affiliate with a qualified national party a different path to the ballot. The presidential candidates of qualified national parties are likely to appear on the ballot in multiple other States besides Florida and to enjoy some level of national organization. In that respect, they are not similarly situated to minor parties in Florida that have no proven national support. Although the extent to which States *must* accommodate the national interest in presidential elections is unclear, *see Stein v. Ala. Sec'y of State*, 774 F.3d 689, 691 (11th Cir. 2014), they are certainly *permitted* to account for this interest by tailoring ballot-access restrictions for candidates with a modicum of national support. And the burden this disparate treatment imposes on minor parties that do not affiliate with a national party is not severe. As explained above, Florida has provided them an alternative path to the ballot that is not overly burdensome. For these reasons, we conclude that the provision of "different routes to the . . . ballot" for differently situated minor parties is justified by sufficiently weighty state interests. *Jenness*, 403 U.S. at 442; *see also Common Cause/Ga.*, 554 F.3d at 1352.

## IV. CONCLUSION

We **AFFIRM** the denial of the motion for a preliminary injunction.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 03, 2020

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-12107-V
Case Style: Independent Party of Florida, et al v. Secretary, State of Florida
District Court Docket No: 4:20-cv-00110-MW-MAF

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellants.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Bryon A. Robinson at (404) 335-6142.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs